

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-08-424-CV

PEDRO E. ESTORQUE, JR., M.D.,                    APPELLANTS
INDIVIDUALLY AND D/B/A PEDRO E.
ESTORQUE, JR., M.D., P.A. AND
AMJAD AWAN, M.D., INDIVIDUALLY
AND D/B/A NORTH TEXAS
GASTROENTEROLOGY
CONSULTANTS, P.A.

V.

SHIRLEY SCHAFER AND                              APPELLEES
ANTHONY B. SCHAFER

------------

FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

------------

## OPINION

------------

## I.   Introduction

This is an interlocutory appeal from a denial of a motion to dismiss challenging the sufficiency of an expert report in a health care liability claim. Appellants are Dr. Pedro Estorque, Jr., individually and d/b/a Pedro Estorque,

Jr., M.D., P.A., and Dr. Amjad Awan, individually and d/b/a North Texas Gastroenterology Consultants, P.A. Appellants challenge the trial court's order denying their motions to dismiss the expert report submitted by Appellees Shirley Schafer and Anthony Schafer. In three issues, Dr. Estorque argues that the trial court abused its discretion by denying his motion because the Schafers' expert report (1) evidenced the expert's lack of qualifications to opine on causation, (2) lacked sufficient explanation of the causal relationship between the breach of care and injury, and (3) lacked explanation of the negligence claim against Pedro Estorque's professional association. Dr. Awan raises the same expert qualifications, causation, and professional association arguments as Dr. Estorque and additionally challenges the report's identical criticisms of both his actions and Dr. Estorque's actions.[1] We affirm in part and reverse in part.

II. Factual and procedural background

The Schafers' original petition contained the following allegations: on March 6, 2006, Shirley arrived at the Presbyterian Hospital emergency room, presenting with severe abdominal pain. Her family physician, Dr. Estorque, admitted her to the hospital for evaluation. Dr. Estorque performed a CT scan on Shirley's abdomen and pelvis. The examination report noted a "4.8

---

[1] Dr. Awan argues that the expert report should have separately addressed North Texas Gastroenterology Consultants, P.A.

2

centimeter cyst on the right ovary and a smaller cyst on the left ovary," a "dilated upper left pale collecting system with a dilated left ureter where a 3.0 millimeter kidney stone was visualized," and "an inflammatory focus related to sigmoid diverticulitis." Dr. Estorque referred Shirley to a gastroenterologist, Dr. Amjad Awan, who consulted during her hospitalization. Dr. Awan further investigated her gastrointestinal-related symptoms and treated Shirley for alleged diverticulitis starting in April 2006. Neither Dr. Estorque nor Dr. Awan referred Shirley to any other doctors.

Shirley continued to feel abdominal pain for nine months after her consultations with both doctors. In December, she consulted with Dr. Fred Cummings, her gynecologist, who reviewed Shirley's chart from her March 6 hospital visit, noting her gynecological and renal issues.[2] On December 2, a new CT scan of her abdomen and pelvis revealed that the 4.8 centimeter cyst revealed in the previous March 6 CT scan had enlarged to 7.2 centimeters and that her left kidney demonstrated "a markedly distended upper pale collecting system" and "intrarenal calculi." Dr. Cummings performed a laparoscopic

---

[2] Shirley had a kidney stone in 2003. At that time, Dr. Estorque had referred her to Dr. Admire, who performed a left renal shockwave lithotripsy to treat the kidney stone.

oophorectomy.[3]  On December 9, 2006, Dr. Admire performed a cystoscopy, left ureteroscopy, and removal of the stone, with placement of stents in the ureters.  The ovarian cysts were benign; however, the delay in treating Shirley's renal problems allegedly resulted in loss of the "total function of one kidney."

On May 19, 2008, the Schafers sued Appellants for negligence, asserting that Dr. Estorque and Dr. Awan breached their standards of care when they each viewed the CT scan results and failed to obtain gynecological and urological consults for Shirley.  Within 120 days of filing suit, the Schafers served the statutorily-required expert report on Appellants.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon Supp. 2008).  Dr. Keith Miller, a board-certified family physician, wrote the report.

Dr. Awan and Dr. Estorque filed motions to dismiss, objecting to the adequacy of the expert report.  Dr. Awan objected to (1) Dr. Miller's qualifications to opine as to the standard of care, (2) Dr. Miller's qualifications as to causation, (3) Dr. Miller's failure to provide sufficient information regarding standard of care and causation for each individual physician, and (4) Dr. Miller's speculative causation opinions.  Dr. Estorque also objected to (1) Dr.

---

[3] An oophorectomy is also known as an "ovariectomy," which is "the surgical removal of an ovary."  *See* Dictionary.com, http://dictionary.classic.reference.com/browse/ovariectomy (last visited Sept. 16, 2009).

Miller's qualifications to render an opinion on causation and (2) the sufficiency of the report to meet the statutory and case law requirements for causation.

The trial court overruled the objections and denied the motions to dismiss. This interlocutory appeal immediately followed.[4]

III.  Standard of review

A trial court's ruling concerning an expert report under section 74.351 (formerly article 4590i, section 13.01) of the Medical Liability and Insurance Act is reviewable under the abuse of discretion standard.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351; *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001).  To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.  *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).  An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the

---

[4] *See Lewis v. Funderburk*, 253 S.W.3d 204, 208 (Tex. 2008) (authorizing appeal from trial court order determining that expert report was adequate and denying motion to dismiss).

same circumstances.  *Bowie Mem'l,* 79 S.W.3d at 52; *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995).

IV.    Statutory requirements

A health care liability claimant must serve an expert report on each defendant no later than the 120th day after the claim is filed.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351.  If the claimant does not serve an expert report on a defendant physician or health care provider within the 120-day period, then on the motion of the affected physician or health care provider, the trial court must dismiss the claim with prejudice.  *Id.* § 74.351(b).

A defendant may challenge the adequacy of a report by filing a motion to dismiss.  *Id.* § 74.351(*l*).  The trial court must grant the motion to dismiss if it finds, after a hearing, that "the report does not represent an objective good faith effort to comply with the definition of an expert report" in the statute.  *Id.* While the expert report "need not marshal all of the plaintiff's proof," it must provide a fair summary of the expert's opinions as to the "applicable standard of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed."  *Id.* § 74.351(r)(6); *Palacios*, 46 S.W.3d at 878 (construing former article 4590i, § 13.01).

6

To constitute a good faith effort, the report must discuss the standards of care, breach, and causation with sufficient specificity (1) to inform the defendant of the conduct the plaintiff has called into question and (2) to provide the trial court with a basis to conclude that the claims have merit. *See Bowie Mem'l,* 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 879. A report does not fulfill this requirement if it merely states the expert's conclusions or if it omits any of the statutory requirements. *Bowie Mem'l*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 879. But the information in the report "does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Palacios,* 46 S.W.3d at 879.

When reviewing the adequacy of a report, the only information relevant to the inquiry is the information contained within the four corners of the document. *Bowie Mem'l*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 878. This requirement precludes a court from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended. *See Austin Heart, P.A. v. Webb,* 228 S.W.3d 276, 279 (Tex. App.—Austin 2007, no pet.). However, section 74.351 does not prohibit experts, as opposed to courts, from making inferences based on medical history. *Marvin v. Fithian*, No. 14-07-00996-CV, 2008 WL 2579824, at *4 (Tex. App.—Houston [14th Dist.] July 1, 2008, no pet.) (mem. op.); *see also* Tex. R. Evid. 703 (providing that an

7

expert may draw inferences from the facts or data in a particular case); Tex. R. Evid. 705 (providing that expert may testify in terms of opinions and inferences).

If a timely served document intended by a claimant to be an expert report is determined by the trial court to be deficient in complying with statutory requirements, the trial court may grant one thirty-day extension to the claimant in order to cure the deficiency. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c). If the court determines that the report is adequate, the defendant may challenge that ruling by interlocutory appeal. *Id.* § 51.014(a); *Funderburk*, 253 S.W.3d at 207. An appeals court may find an expert report deficient and remand the case to the trial court to decide whether to grant a thirty-day extension to cure the deficiency. *See Leland v. Brandal*, 257 S.W.3d 204, 208 (Tex. 2008).

IV.     Dr. Miller's qualifications for causation

Dr. Estorque argues in his first issue and Dr. Awan argues in his third issue that Dr. Miller is not qualified to render opinions on causation in this case.

A.     Applicable Law

A person is qualified to give opinion testimony concerning the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care only if the person (1) is a physician and (2) is otherwise qualified to render opinions on the causal

8

relationship under the Texas Rules of Evidence. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.351(r)(5)(C), 74.403(a) (Vernon 2005). The party offering the witness as an expert on causation must establish that the witness is qualified to testify under Texas Rule of Evidence 702. *Mem'l Hermann Healthcare Sys. v. Burwell*, 230 S.W.3d 755, 762–63 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding doctor was qualified to opine on causation because report demonstrated direct experience with treating condition at issue).

To be qualified under Rule 702, an expert witness must have "knowledge, skill, experience, training, or education" regarding the specific issue before the court. Tex. R. Evid. 702; *Thomas v. Alford*, 230 S.W.3d 853, 857, 860 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Qualifications must appear in the expert report and cannot be inferred. *See Olveda v. Sepulveda*, 141 S.W.3d 679, 683 (Tex. App.—San Antonio 2004, pet. denied). When a party can show that a subject is substantially developed in more than one field, testimony can come from an expert in any of those fields. *Thomas*, 230 S.W.3d at 857 (citing *Broders v. Heise*, 924 S.W.2d 148, 154 (Tex. 1996)). The analysis of the expert's qualifications under section 74.351 is limited to the four corners of the expert report and the expert's curriculum vitae. *See Palacios*, 46 S.W.3d at 878.

A physician does not need to be a practitioner in the same speciality as the defendant to qualify as an expert. *See Broders,* 924 S.W.2d at 153; *Moheb v. Harvey*, 2008 WL 5501166, at *6 (Tex. App.—Beaumont Jan. 15, 2009, no pet.) (mem. op., not designated for publication). The proper inquiry in assessing a doctor's qualifications to submit an expert report is not his area of expertise but his familiarity with the issues involved in the claim before the court. *See Blan v. Ali*, 7 S.W.3d 741, 746 (Tex. App.—Houston [14th Dist.] 1999, no pet.). A physician who is not of the same school of medicine may be competent if he has practical knowledge of what is usually and customarily done by a practitioner under circumstances similar to those confronting the defendant. *See Ehrlich v. Miles*, 144 S.W.3d 620, 625 (Tex. App.—Fort Worth 2004, pet. denied).

B.     Analysis

Dr. Estorque and Dr. Awan argue that Dr. Miller did not have sufficient qualifications in the specialities of nephrology, urology, and gynecology to render opinions on the causal relationship between the physicians' failure to refer and the resulting kidney disorders and gynecological cysts.

To establish his qualifications, Dr. Miller was required to demonstrate his knowledge, skill, experience, training, or education regarding the *specific issue* raised by the Schafers' claim that would qualify him to give an opinion on that

10

subject. *See Ehrlich*, 144 S.W.3d at 625; *see also Roberts v. Williamson*, 111 S.W.3d 113, 120–21 (Tex. 2003). The Schafers' original petition indicates that their negligence issue relates to Shirley's alleged injuries resulting from both doctors' conduct in their diagnosis, treatment, and lack of referral for her exhibited abdominal pain, rather than any injury from a specialized treatment or surgery performed by Dr. Awan or Dr. Estorque. The specialized branches of nephrology, urology, and gynecology are not implicated by the physician's alleged negligence in failing to refer Shirley to other specialists for the renal and ovarian problems revealed in the CT scan. *See Mosely v. Mundine*, 249 S.W.3d 775, 779 (Tex. App.—Dallas 2008, no pet.) (stating that alleged conduct causing the patient's injuries related to the physician's ability to interpret a routine chest x-ray and identify an abnormality rather than to diagnose and treat cancer).

Dr. Miller stated that he had experience treating patients with symptoms similar to the symptom's Shirley exhibited from March 2006 to December 2006. Dr. Miller stated that the standards for treating patients with similar signs, symptoms, and conditions are "national standards of care" and "apply to all physicians." Dr. Miller stated that he was familiar with the causes of abdominal pain, kidney stones, ureteral obstruction, and ovarian masses. He also stated that he was familiar with complications arising from the referenced

11

medical conditions and that he participated in the development and use of protocols, policies, and procedures for patients with similar conditions. Dr. Miller stated that he "kn[e]w the accepted standards of care, the breaches and violations of the standards of care, and the causation link between the breaches and violations of the standard of care as they apply to Dr. Pedro Estorque and Dr. Amjad Awan, on the basis of [his] education, knowledge, training, and experience." *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5)(C).

Dr. Miller stated that he acquired his "education, knowledge, training, and experience" through attending classes that taught the evaluation, treatment, diagnosis, and care of patients with the same or similar conditions as Shirley. Dr. Miller further stated that he acquired knowledge about Shirley's conditions through practical experience, medical conferences, technical works published in textbooks and journals, consultations with other physicians, communications with hospital nurses, staff and residents, lectures personally given in conferences, participation in hospital committees, and observation of the nurses and supervising residents that care and treat patients with the same or similar medical conditions as Shirley.

Based on his knowledge, skill, experience, training, and education, we conclude that Dr. Miller is qualified to opine about causation as to both Dr. Estorque and Dr. Awan. *See* Tex. R. Evid. 702; *compare Mosely,* 249 S.W.3d

at 779 (holding that expert's knowledge regarding emergency room physicians' scope of practice qualified him to opine on causal link between failing to interpret abnormality in x-ray and claimant's cancer), *and Palafox v. Silvey*, 247 S.W.3d 310, 316 (Tex. App.—El Paso 2007, no pet.) (holding physician's experience and training with elderly patients and knowledge of "swallowing mechanism" sufficient to opine about causal link between the non-pureed diet and aspiration-related death), *with Collini v. Pustejovsky*, 280 S.W.3d 456, 466 (Tex. App.—Fort Worth 2009, no pet.) (holding doctor not qualified to opine on causation when he did not state experience or training regarding prescribing Reglan or diagnosing tardive dyskinesia to support statements about the physician's course of treatment).

We hold that the trial court did not abuse its discretion in overruling Appellants' objections for this issue. We therefore overrule both Dr. Estorque's first issue and Dr. Awan's third issue concerning Dr. Miller's qualifications to opine on causation.

V.    Dr. Miller's causation statements

Dr. Estorque argues in his second issue and Dr. Awan argues in his first issue that Dr. Miller failed to provide a specific causal link between the health care providers' breach of the standard of care and the injury or damages.

A.     Applicable Law

An expert report must provide a fair summary of the causal relationship between the failure of a health care provider to meet the standards of care and the injury, harm, or damages claimed.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6); *Palacios*, 46 S.W.3d at 875, 878.  An expert report cannot merely state the expert's conclusions about the statutory elements; the expert must explain the basis of his statements made regarding causation and link his conclusions to the facts.  *See Bowie Mem'l,* 79 S.W.3d at 52.  An expert report does not sufficiently address the causation element if it merely "'provide[s] insight' about the plaintiff's claims."  *Id.*  A causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm and that absent said act or omission, the harm would not have occurred.  *Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 249 (Tex. App.—San Antonio 2004, no pet.).  The expert report must explain how the alleged breach caused the harm or injury.  *See Bowie Mem'l,* 79 S.W.3d at 53; *Collini*, 280 S.W.3d at 467; *Bidner v. Hill*, 231 S.W.3d 471, 475 (Tex. App.—Dallas 2007, pet. denied).  However, to avoid dismissal, a plaintiff need not present all the evidence necessary to litigate the merits of his case.  *Palacios*, 46 S.W.3d at 879; *Patel v. Williams*, 237 S.W.3d 901, 904 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

14

B.     Analysis

Dr. Miller stated, separately as to each physician, that Dr. Estorque and Dr. Awan failed to apply the standard of care required "during the hospitalization of [Shirley] on 3-6-06."  Dr. Miller stated that each doctor "should have obtained a urological consultation and/or referral in order to obtain definitive care and treatment of Shirley's ureteral obstruction."  He also stated each doctor "should have obtained a gynecological consultation and/or referral in order to obtain definitive care and treatment for [Shirley]'s ovarian mass." Dr. Miller concluded that Dr. Estorque's and Dr. Awan's "failure to practice according to acceptable standards, more likely than not and to a reasonable degree of medical probability, resulted in loss of function of [Shirley]'s kidney" and "resulted in needless pain and suffering to [Shirley]."  In his summary section, Dr. Miller added that:

> More likely than not, this failure on the part of . . . Dr. Pedro Estorque and Dr. Amjad Awan, to practice in an acceptable manner directly resulted in [Shirley]'s delayed diagnosis and treatment of kidney stones, ureteral obstruction, and ovarian masses, as well as overall worsening of her condition, pain, mental anguish, loss of dignity, and loss of kidney function.  As more specifically set forth above, the actions, and inactions, of Dr. Pedro Estorque and Dr. Amjad Awan, caused the conditions and complications described above.[5]

---

[5]... Dr. Miller also stated that "these negligent acts and omissions as stated above, proximately caused [Shirley]'s delayed diagnosis and treatment of kidney stones, ureteral obstruction, and ovarian masses, as well as overall

15

It is Dr. Miller's opinion, as stated in his report, that "[h]ad the standards of care been followed by [the physicians], then, more likely than not, and based upon a reasonable degree of medical certainty, [Shirley] would not have suffered her delayed diagnosis and treatment of kidney stones . . . [and the other listed conditions]."

Dr. Miller's report does not explain the basis of his opinions as to causation; his report leaves gaps by not explaining how or why the physicians' failure to consult a urologist or gynecologist caused worsening or progression of Shirley's listed conditions. *See Ehrlich,* 144 S.W.3d at 628 (holding report conclusory because it failed to link alleged negligent activity to the specific injuries in the case); *Hutchinson v. Montemayor*, 144 S.W.3d 614, 617 (Tex. App.—San Antonio 2004, no pet.) (holding report conclusory because it did not provide sufficient information linking the failure to order an arteriogram to Hutchinson's eventual leg amputation); *cf. Polone v. Shearer,* 287 S.W.3d 229, 236–37 (Tex. App.—Fort Worth, no pet.) (holding causation report not conclusory because experts linked the failure to timely evaluate breast mass and pain to the progressive growth and increased risk of metastatic breast cancer with subsequent morbidity and mortality), *and Eikenhorst v. Wellbrock,*

---

worsening of her condition, pain, mental anguish, loss of dignity, and loss of kidney function."

16

No. 01-07-00459-CV, 2008 WL 2339735, at *10 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (mem. op., not designated for publication) (holding causation report not conclusory because expert stated that patient would have received immediate surgery and would have had a greatly recovered health status had he obtained an early diagnosis). Dr. Miller's report does not provide a chain of causation that adequately describes how the ureter, kidney, and ovarian conditions, left untreated, progressed to the claimed injured state and how Dr. Estorque's and Dr. Awan's acts were a substantial factor in this progression. *See Costello*, 141 S.W.3d at 249 (holding report did not explain how alleged failure to act was a substantial factor in bringing about patient's death).

Beyond Dr. Miller's statement that had the standards of care been followed, Shirley would not have suffered her delayed diagnosis and subsequent conditions, Dr. Miller does not explain how the injuries would not have occurred if Dr. Estorque and Dr. Awan had obtained consults from a urologist and gynecologist earlier in Shirley's course of treatment. *Compare Eikenhorst*, 2008 WL 2339735, at *10 (holding causation sufficient where expert stated that "surgical intervention would have reliev[ed] pressure on the spinal cord and stabiliz[ed] the spine"), *with Jones v. King*, 255 S.W.3d 156, 160 (Tex. App.—San Antonio 2008, pet. denied) (holding that expert report needed an

17

explanation that "earlier treatment would have shortened the duration of meningitis, precluding additional pain and suffering, or preventing other alleged injuries or damages"). Dr. Miller did not explain how the alleged breaches led to a deterioration of kidney function and triggered needless pain and suffering, and we cannot infer that failing to notify and send Shirley to a urologist and gynecologist was a substantial factor in causing the alleged conditions and injuries. *See Collini,* 280 S.W.3d at 467 (holding expert report did not sufficiently explain how Dr. Collini's prescriptions of Reglan led to Pustejovsky's condition).

Based on the report's limited description of causation, we cannot say that Dr. Miller sufficiently explained how the doctors' inaction caused Shirley's injuries to provide the trial court with a basis to conclude that the Schafers' claim had merit. *See Bowie Mem'l,* 79 S.W.3d at 52. Therefore, the trial court abused its discretion by denying the motions, and we sustain Dr. Estorque's second issue and Dr. Awan's first issue.

VI. Dr. Miller's criticism of the two physicians

Dr. Awan argues in his second issue that an expert report must provide an individualized assessment of the statutory elements as to each health care provider that has been sued.

18

A.    Applicable law for multiple defendants

When a plaintiff sues more than one defendant, the expert report must set forth the standard of care applicable to each defendant and explain the causal relationship between each defendant's individual acts and the injury. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (r)(6); *Sanjar v. Turner*, 252 S.W.3d 460, 465 (Tex. App.—Houston [14th Dist.] 2008, no pet.) Collective assertions of negligence against various defendants are inadequate. *See CHCA Mainland, L.P. v. Burkhalter*, 227 S.W.3d 221, 227 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (stating that claimant failed to address various negligence elements for hospital, nurses, and staff); *Doades v. Syed*, 94 S.W.3d 664, 671–72 (Tex. App.—San Antonio 2002, no pet.) (holding that report failed to identify standard of care for each of the defendant health care providers).  Identifying the correct standard of care is essential because the trial court cannot determine whether each doctor breached his or her duty without specific information about what that particular doctor should have done.  *See Palacios*, 46 S.W.3d at 880.

B.    Analysis

Dr. Miller stated that the accepted standards of care for the "assessment, diagnosis, and treatment of medical conditions similar to those of [Shirley] apply to all physicians."  Dr. Miller listed the same standard of care, in separate sentences,

19

for both physicians: that they were required, while caring for Shirley, to obtain a "urological" and "gynecological consultation" for the ureteral obstruction and ovarian mass. All of the listed defendants in the case were involved in Shirley's diagnosis for her abdominal pain; both Dr. Estorque and Dr. Awan[6] diagnosed Shirley's symptoms following her initial CT scan. Dr. Awan argues that the report fails to give an "individualized analysis" of his conduct; however, based on each party's recitation of the facts, Dr. Estorque and Dr. Awan did not appear to have different roles or duties for the Schafers' asserted diagnostic and referral issue. In their petition, the Schafers are not challenging Dr. Awan's subsequent gastroenterological course of treatment; rather, they argue that Dr. Awan and Dr. Estorque breached the standard of care when both physicians read the CT scans, failed to disclose the results to Shirley, and then failed to refer Shirley to specialists in urology and gynecology.

Although Dr. Miller uses the same standard for both physicians, his report outlines each doctor's standard of care separately, identifying each doctor and his standard of care in the case. *See Romero v. Lieberman,* 232 S.W.3d 385, 392 (Tex. App.—Dallas 2007, no pet.) (holding same standard of care adequate for all listed medical doctors involved in treating septicemia condition); *In re*

---

[6] Both doctors were working in the course of their employment in their professional associations, which we will address in the next section.

20

*Stacy K. Boone, P.A.*, 223 S.W.3d 398, 405–06 (Tex. App.—Amarillo 2006, orig. proc.) (holding expert report adequate on standard of care for multiple defendants where each defendant was in the same type of care and the standard was the same for each); *Cf. Taylor v. Christus Spohn Health Sys. Corp.*, 169 S.W.3d 241, 245 (Tex. App.—Corpus Christi 2004, no pet.) (holding that report failed to address separate standards of care for varied duties of the defendants, including the hospital, doctors' association, emergency room physician, and cardiologist).  Dr. Estorque and Dr. Awan may disagree with Dr. Miller's opinions regarding the standard of care applicable to each of them, but the standards of care are sufficiently stated to provide both physicians with notice of the conduct at issue.  *See In re Boone*, 223 S.W.3d at 406.  Because Dr. Miller applied the proper standard of care for both physicians' identical conduct, we must overrule this segment of Dr. Awan's second issue.

VII.   Dr. Miller's treatment of the professional associations

Dr. Estorque argues in his third issue and Dr. Awan argues in his second issue that the report fails to contain sufficient criticism or analysis of their respective professional associations, "North Texas Gastroenterology Consultants, P.A." and "Dr. Pedro E. Estorque, Jr. M.D., P.A."

21

A. Applicable law

A plaintiff must provide an expert report to each health care provider against whom he or she has alleged a health care liability claim, or the claim must be dismissed on the health care provider's motion. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b). Under section 24 of the Professional Associations Act ("the Act"), "the association (but not the individual members, officers or directors) shall be jointly and severally liable with the officer or employee furnishing professional services for such professional errors, omissions, negligence, incompetence, or malfeasance on the part of such officer or employee when such officer or employee is in the course of his employment for the association." Tex. Rev. Civ. Stat. Ann., art. 1528f, § 24 (Vernon 2003); *Obstetrical and Gynecological Assocs., P.A. v. McCoy*, 283 S.W.3d 96, 105 (Tex. App.—Houston [14th Dist.] 2009, pet. filed) (holding that the legal consequences to a professional association are based solely on the doctors' conduct, making the need for a separate expert report unnecessary) (citing *Carl J. Battaglia, M.D., P.A. v. Alexander*, 177 S.W.3d 893, 902–03 (Tex. 2005)). Under the Act, the negligence of a professional association's employee is imputed to the association; thus if an expert report is sufficient as to specific claims against the doctor, then the report is sufficient as to the same claims against the professional association. *See Ctr. for*

22

*Neurological Disorders, P.A. v. George*, 261 S.W.3d 285, 295 (Tex. App.—Fort Worth 2008, pet. denied).  Further, the Texas Supreme Court recently stated in *Gardner v. U.S. Imaging, Inc.* that "[w]hen a party's alleged health care liability is purely vicarious, a report that adequately implicates the actions of that party's agents or employees is sufficient."  274 S.W.3d 669, 671–72 (Tex. 2008).

>     B.     Analysis

It is undisputed that Dr. Estorque and Dr. Awan were acting in the course and scope of their employment at their respective professional associations when they initially examined Shirley's symptoms in March 2006.  *See* Tex. Rev. Civ. Stat. Ann., art. 1528f, § 24; *Battaglia*, 177 S.W.3d at 901-02 (explaining that "[n]either the pleadings nor the evidence furnished any basis for drawing distinctions between the physicians and their respective professional associations").  The Schafers have not alleged any theories of negligence distinct from the negligence of the two physicians; no direct acts by the professional associations as separate entities have been identified or challenged.[7]  *See McCoy*, 283 S.W.3d at 106 (holding that when liability is

---

[7] The Schafers named the professional associations in the suit and served both with process; Dr. Estorque and Dr. Awan were named as registered agents to receive those citations.

23

based solely on the actions of a professional associations' principals and not the entities, no expert report is required). The expert report and the petition do not specifically allege that the Schafers are suing the professional associations on the legal principle of vicarious liability; however, the documents clearly identify only the physicians' conduct as constituting negligence. *See Univ. of Tex. Sw. Med. Ctr. v. Dale*, 188 S.W.3d 877, 879 (Tex. App.—Dallas 2006, no pet.) (concluding that plaintiffs need not mention hospital in expert report when plaintiffs limited their claim against hospital to vicarious liability for acts of employees). Thus, we conclude and hold that the Schafers did not need to file an expert report specifically addressing the professional associations that were only implicated by the actions of the two physicians. *McCoy,* 283 S.W.3d at 106.

Because the professional associations' liability was based solely on the acts of its physicians, we overrule Dr. Estorque's third issue and Dr. Awan's second issue pertaining to this argument.

## VIII. Conclusion

Because Dr. Miller's report insufficiently describes the causal link between Dr. Estorque's and Dr. Awan's breaches and the Schafers' injury and thus fails to provide the trial court with sufficient information to determine that the Schafers' claims have merit, we must sustain Dr. Estorque's and Dr. Awan's

24

issues with regard to the inadequacy of Dr. Miller's expert report on the causation element. We note that the Shafers raised only claims of vicarious liability against the professional associations. We therefore reverse the trial court's decision denying Appellants' motions to dismiss and remand this case to the trial court to consider the issue of whether to grant the Schafers a thirty-day extension to file an adequate expert report. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c); *Leland*, 257 S.W.3d at 208.

                                                 ANNE GARDNER
                                                 JUSTICE

PANEL: LIVINGSTON, DAUPHINOT, and GARDNER, JJ.

LIVINGSTON, J., dissents without opinion.

DELIVERED: September 17, 2009