Opinion filed April 22,
2010 

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                           No. 11-09-00305-CV

                                                     __________

 

                              ERROL
C. ANDERSON, M.D., Appellant

 

                                                             V.

JESSICA GONZALEZ,
INDIVIDUALLY AND AS REPRESENTATIVE OF

THE ESTATE OF DAISY SILVAS
GONZALEZ, DECEASED, Appellee



 

                                   On
Appeal from the 358th District Court

 

                                                             Ector
County, Texas

 

                                                  Trial
Court Cause No. D-124,393

 



 

                                                                  O
P I N I O N

            

This is an accelerated
interlocutory appeal in a health care liability suit.  In one issue, appellant,
Errol C. Anderson, M.D., complains that the trial court abused its discretion
in overruling his objections to the qualifications of the plaintiff’s expert
and in finding the plaintiff’s expert report sufficient under the Medical
Liability Act.[1]
 We affirm. 




Background Facts

            Jessica Gonzalez, individually
and as representative of the estate of Daisy Silvas Gonzalez, deceased, sued Dr.
Anderson for the wrongful death of Daisy.  Daisy was born prematurely and was
admitted to the Neonatal Intensive Care Unit.  In order to help Daisy digest
her food, a PICC line was placed.  A PICC line is a long flexible tube inserted
into the vein of the arm and then threaded to the superior vena cava, a major
vein near the heart.  A PICC line is used to distribute nutrients, fluids, or
drug treatment directly into the bloodstream.  To confirm the proper placement
of the PICC line, a chest X-ray was ordered.  Dr. Anderson read Daisy’s chest X-ray
and stated that the PICC line was properly placed.  The PICC line was used to
administer total parenteral nutrition (TPN).  Four days later, Daisy suffered a
cardiac arrest and died.

Gonzalez alleges that Dr. Anderson’s failure to determine
that the PICC line was improperly placed resulted in Daisy’s death.  Gonzalez
filed the expert report and curriculum vitae of Randall M. Patten, M.D.  Dr.
Anderson objected to Dr. Patten’s expert report stating that it was insufficient
under Section 74.351(a) and asking that the cause be dismissed.  After a
hearing, the trial court found that the expert report was sufficient.

Standard of Review

We review a trial court’s determination on the sufficiency
of an expert report in a health care liability claim for an abuse of
discretion.  Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46
S.W.3d 873, 875 (Tex. 2001).  A trial court abuses its discretion when it acts
without reference to any guiding rules or principles or acts in an arbitrary or
unreasonable manner.  Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241-42 (Tex. 1985).   We may not substitute our own judgment for
the trial court’s judgment.  Walker v. Packer, 827 S.W.2d 833, 839 (Tex.
1992).  When reviewing the adequacy of an expert report, the only information
relevant to the inquiry is the information contained within the four corners of
the document.  Bowie Mem’l Hospital v. Wright, 79 S.W.3d 48, 52 (Tex.
2002).  We cannot fill in gaps in an expert report by drawing inferences or
guessing as to what the expert likely meant or intended.  In re McAllen Med.
Ctr., Inc., 275 S.W.3d 458, 463 (Tex. 2008); Austin Heart, P.A. v. Webb,
228 S.W.3d 276, 279 (Tex. App.—Austin 2007, no pet.).  

Texas Medical Liability Act 

Within 120 days of filing a health care liability claim, a
plaintiff must serve an expert report with the expert’s curriculum vitae to
each defendant against whom a liability claim is asserted.  Section 74.351(a). 
An expert report is defined as:

[A] written report by an expert that provides a fair
summary of the expert’s opinions as of the date of the report regarding
applicable standards of care, the manner in which the care rendered by the
physician or health care provider failed to meet the standards, and the causal
relationship between that failure and the injury, harm, or damages claimed.  

 

Section 74.351(r)(6).

            A defendant may file a motion challenging the
adequacy of the report.  Section 74.351(l).  The trial court shall grant
the motion if it finds, after a hearing, that the report does not represent an
objective good faith effort to comply with the definitions of the expert
report.  Id.   While an expert report need not marshal all of the
plaintiff’s proof, it must provide a fair summary of the expert’s opinions as to
the applicable standard of care, the manner in which the standard of care was
breached, and the causal relationship between the breach and the injury.  Palacios,
46 S.W.3d at 878.  To constitute a good faith effort, the report must discuss
the standard of care, breach, and causation with sufficient specificity to
inform the defendant of the conduct the plaintiff has called into question and
to provide a basis for the trial court to conclude that the claims have merit.  Jernigan
v. Langley, 195 S.W.3d 91, 93 (Tex. 2006).  

A person is qualified to give expert testimony concerning
the causal relationship between the damages claimed and the alleged departure
from the applicable standard of care only if the person is a physician and is
otherwise qualified to render opinions on that causal relationship under the
Texas Rules of Evidence.  Section 74.351(r)(5)(C).  To be qualified under the
Texas Rules of Evidence, an expert must have knowledge, skill, experience,
training, or education regarding the specific issue before the court that would
qualify the expert to give an opinion on that particular subject.  Broders v.
Heise, 924 S.W.2d 148, 153 (Tex. 1996). When a party can show that a
subject is substantially developed in more than one field, testimony can come
from a qualified expert in any of those fields.  Id. at 154.    An
expert report authored by a person who is not qualified to testify cannot
constitute an adequate report.  Collini v. Pustejovsky, 280 S.W.3d 456, 462
(Tex. App.—Fort Worth 2009, no pet.); Ehrlich v. Miles, 144 S.W.3d 620,
624-26 (Tex. App.—Fort Worth 2004, pet. den’d). The proper inquiry concerning
whether a doctor is qualified to testify is not his area of practice but his
familiarity with the issues involved in the claim before the court.  Estorque v. Schafer,
302 S.W.3d 19, 26 (Tex. App.—Fort Worth 2009, no pet.); Collini,
280 S.W.3d at 464.  A
physician who is not of the same school of medicine may be competent if he has
practical knowledge of what is usually and customarily done by a practitioner
under circumstances similar to those confronting the defendant.  Broders,
924 S.W.2d at 152-53. 

The Report

Gonzalez’s expert, Dr. Patten, is a board certified
physician in radiology.   At the time he authored his report, Dr. Patten was
the chief radiologist with the Northwest Radiology Group.  He has been a
professor of radiology at the University of Colorado School of Medicine and a clinical
associate professor of radiology at the University of Washington School of
Medicine.  Dr. Patten is on the active medical staff at Providence St. Peter Hospital,
and he is a member of the Radiological Society of North America, the American
Roentgen Ray Society, and the American College of Radiology.  On a daily basis,
Dr. Patten is called upon “to interpret x-ray film studies such as those
performed for Daisy Gonzale[z] by Errol C. Anderson, M.D.”  He has routinely
been asked to determine the radiological practice of the proper placement of a
PICC line.

            In his report, Dr. Patten stated that he
reviewed Daisy’s medical records, the X-ray films performed on Daisy, and the
autopsy report. Daisy’s medical records showed that Dr. Anderson’s X-ray report
stated that the PICC line “has been inserted and terminates under the medial
clavicle.”  Dr. Ancerson’s chest X-ray report gave no indication that the
PICC line was improperly placed, and later reports by Dr. Anderson did not
mention the placement of the PICC line.  The autopsy revealed that the tip of
the PICC line was actually located in the right ventricle of Daisy’s heart, “terminating
on the epicardial surface, causing a ‘mechanical disruption’ of the
anterior-lateral right ventricle.”  From the autopsy report, Dr. Patten
determined that Daisy died “due to a pericardial effusion secondary to a PICC
line with leakage of TPN into the pericardium. The mechanism of death was
cardiac tamponade.”

Dr. Patten stated that the standard of care requires a
radiologist interpreting a chest X-ray for proper PICC line placement to
specifically and accurately identify the placement of the PICC line and to
inform the treating physician either that the line is properly positioned or
that the line is not properly positioned.  The standard of care also requires
that the radiologist continue to assess the placement of the PICC line on any subsequent
chest X-rays.  Dr. Patten, in his reports, stated that Dr. Anderson breached
the standard of care when he reported that the PICC line “terminate[d] under
the medial clavicle” when review of the images revealed that the tip of the
PICC line was actually within the heart.  Dr. Patten also stated that Dr.
Anderson further breached the standard of care when he failed to mention the placement
of the PICC line in his review of subsequent chest X-rays.

Dr. Patten concludes in his report that this breach of the
standard of care proximately caused Daisy’s death.  In his report, Dr. Patten stated:

Based upon reasonable medical probability, the above-noted
deviations from the accepted standard of care resulted in and are a proximate
cause of Daisy Gonzalez’s untimely death. 

 

The multiple breaches of the applicable standards of care
by Dr. Anderson allowed the misplaced PICC line to cause cardiac tamponade which
compressed Daisy’s heart to the point of cardiac arrest and death.  

 

Specifically, Dr. Anderson’s failure to recognize the
improper placement of the PICC line that is evident in the chest x-ray taken to
confirm the PICC line placement on 09/21 allowed the tip of the PICC line that was
improperly pressing against the wall of the right ventricle in Daisy’s heart to
disrupt the ventricular wall. Dr. Anderson’s breach of the standard of care
then allowed the TPN solution to go into the pericardial space and thus cause
the cardiac tamponade with resulted in Daisy’s death.  Had Dr. Anderson not
breached and instead met the required Standards of Care, the improper placement
of the PICC line would have been detected and corrected prior to causing damage
to Daisy’s heart, thus saving her life.

 

Analysis

Dr. Anderson argues that Gonzalez’s expert is not qualified
to render an opinion on the cause of Daisy’s cardiac tamponade, cardiac arrest,
or the cause of death of a premature newborn because his report and
accompanying curriculum vitae indicate no experience, training or knowledge in
the area of cardiac tamponade or cardiac arrest.  Dr. Anderson argues that the
specific issue before the court is the cause of the cardiac tamponade, cardiac
arrest, or cause of death in a premature newborn. We disagree.

This case is analogous to Mosely v. Mundine, 249
S.W.3d 775 (Tex. App—Dallas 2008, no pet.).  In Mosely, an emergency
room physician misread X-ray films of a patient being treated for injuries
arising out of a traffic accident. The physician read the film as normal even
though the X-ray showed a small tumor on the patient’s lung.  The patient was
released.  Two years later, the tumor was found on another X-ray film.  The
patient sued the initial emergency room doctor alleging that, had the X-ray
film been properly read and the tumor discovered at the first emergency room
visit, her treatment and prognosis would have been better.  The plaintiff filed
an expert report authored by an emergency room physician.  The defendant doctor
filed objections to the report, stating that the emergency room doctor was not
qualified to give opinions on the treatment and prognosis for cancer. The
Dallas Court of Appeals explained that the conduct causing the plaintiff’s
injuries related to the ability of the emergency room physician to interpret a
routine chest X-ray and indentify an abnormality, not the diagnosis and
treatment of cancer.   Mosely, 249 S.W.3d at 779.  

As in Mosely, the causation issue in this case
relates to the duty of Dr. Anderson to recognize potential harm and take
appropriate action.  In her petition, Gonzalez alleges that Dr. Anderson’s
negligence arises from his failure to identify the improper placement of the
PICC line in his interpretation of the X-rays.  Dr. Patten did not determine
the cause of Daisy’s death.  He reviewed the autopsy report and her medical
records in determining the cause of her death.  An expert may rely on
the opinions of other individuals who have rendered reports or diagnoses.  Kelly
v. Rendon, 255 S.W.3d 665, 676 (Tex. App.—Houston [14th Dist.] 2008,
no pet.); Cresthaven Nursing Residence v. Freeman, 134 S.W.3d 214, 234
(Tex. App.—Amarillo 2003, no pet.); see also Tex. R. Evid. 703 (stating that an expert can base an opinion
on reasonably reliable data).  Dr. Patten concluded
that the failure to recognize the improper placement of the PICC line led to
TPN being distributed into Daisy’s heart and, thus, causing cardiac arrest.   

Dr.
Patten does not have to be an expert in cardiology.  In Livingston v.
Montgomery, 279 S.W.3d 868 (Tex. App.—Dallas 2009, no pet.), an
obstetrician/gynecologist provided an expert opinion on the neurological
injuries a baby suffered during labor and delivery.  The court held that an
obstetrician in his every day practice of managing labor and delivery has the experience,
knowledge, and training to opine on the complications that can stem from labor
and delivery, including neurological injuries.  Id. at 877.  Similarly,
Dr. Patten performs the type of review of chest X-rays that Dr. Anderson
performed in this case on a daily basis.  This practice gives Dr. Patten the
experience, knowledge, and training regarding injuries that can occur when an
improperly placed PICC line is not identified. 

Dr. Patten has experience, knowledge, and training in the
area of determining proper placement of a PICC line.  He is an experienced
radiologist, has authored numerous articles, has taught in the area of radiology,
and has performed this type of analysis of X-ray films on a daily basis.  His
report outlines the standard of care for a radiologist, how Dr. Anderson
breached that standard of care, and how that breach caused the damage to
Daisy’s heart.  The expert report constitutes a good faith effort by Gonzalez
to inform Dr. Anderson of the conduct she has called into question and to
provide a basis for the trial court to conclude that the claims have merit. 
The trial court did not abuse its discretion in finding the expert report
sufficient under Section 74.351(a).  We overrule Dr. Anderson’s issue on
appeal.

Conclusion

We affirm the order of the trial court. 

 

 

                                                                                    RICK
STRANGE

                                                                                                JUSTICE

 

April 22, 2010

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









                [1]Tex. Civ. Prac. & Rem.
Code Ann. §§ 74.001–.507 (Vernon 2005
& Supp. 2009).