

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-16-00487-CV

STEVEN DOUGLAS PEDRO, M.D.                                                  APPELLANT

V.

SHERRIE R. LAKE                                                                      APPELLEE

----------

### FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 141-282808-15

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In a single issue in this accelerated interlocutory appeal, Appellant Steven Douglas Pedro, M.D., appeals the trial court's order overruling his objections to Appellee Sherrie R. Lake's second chapter 74 expert report and denying his

---

[1]*See* Tex. R. App. P. 47.4.

motion to dismiss. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (West Supp. 2016), § 74.351(b) (West 2017). We reverse and remand.

## II.  Factual and Procedural Background

Lake sued Dr. Pedro for medical malpractice in December 2015. In her original petition, Lake alleged that she had a history of skin cancer and went to see Dr. Pedro when she became concerned about a mole on her neck. In November 2013, Dr. Pedro performed a biopsy that confirmed basal cell carcinoma and performed surgery on Lake on December 13, 2013. She saw her primary care physician thereafter, where "concerns were raised [that Dr. Pedro] had removed in [sic] incorrect mole or lesion," and her primary care physician referred her to Dr. Patrick Keehan, D.O., to perform a biopsy, which occurred on January 6, 2014. That biopsy showed that the tissue removed from the "right posterior internal scalp" was diagnosed with basal cell carcinoma.

Lake alleged that Dr. Pedro removed the wrong mole and that the right mole—the one that had been biopsied in November 2013—was not removed until June 11, 2014 by another doctor, based on her referral from Dr. Keehan, and she sought damages for the delay and for his having performed unnecessary surgery. Lake alleged that her delay between her post-January 2014 biopsy results and the June 2014 surgery was because "the area where [Dr. Pedro] performed his December 13, 2013 surgery needed to heal."

2

On March 31, 2016, Lake filed her expert report. In the report, Dr. Schield M. Wikas, a clinical dermatologist, testified that when Lake saw Dr. Pedro in November 2013,

> there was a lesion on the "right neck," which was biopsied and diagnosed as basal cell carcinoma. A subsequent excision was done on 12/12/13 on the "right neck," with the pathology diagnosis of "healing biopsy site with early dermal scarring (history of basal cell carcinoma), totally excised."

> After an appointment with her primary care physician, there was concern about a lesion on the right occipital scalp that was near the initial biopsy and excision site. Ms. Lake subsequently saw Dr. Patrick Keehan to perform a biopsy which was done on 01/06/14. The biopsy was on the right occipital scalp adjacent to the previous excision. The diagnosis result of Dr. Keehan's biopsy of "skin, right posterior lateral scalp" was basal cell carcinoma, nodular type. Ms Lake was then referred to the Mohs practice of Alexander L. Berlin, M.D. Ms. Lake had a Mohs micrographic surgery procedure on 6/11/14 from the right posterior lateral scalp, excising the remainder of this basal cell carcinoma.

> After reviewing the case materials/documents sent to me, it is my opinion the [sic] Dr. Pedro fell below the standard of care by failing to diagnose a basal cell carcinoma which was obvious to her primary care physician adjacent to the biopsy and excision site identified by Dr. Pedro as "right neck." The standard of care is to diagnose the basal cell carcinoma and to expeditiously treat that skin cancer. As a direct and proximate result of the violations of the standard of care by Dr. Steven Douglas Pedro, the basal cell carcinoma on the scalp of Sherrie Lake was not diagnosed during the November 6, 2013, December 13, 2013 and December 21, 2013 visits to Dr. Pedro. If the basal cell carcinoma was diagnosed during this time, the additional surgery that was required could have been scheduled and occurred in a timelier manner. The emotional and financial burdens associated with not diagnosing and treating this basal cell carcinoma on the scalp are well documented throughout the medical literature. I hold all of my opinions with a reasonable degree of medical probability.

Dr. Pedro objected to the expert report, complaining that it failed to establish the standards of care and breach applicable to him, failed to establish causation, and failed to establish injury. He moved to dismiss Lake's claim based on the report's inadequacies.

At the October 14, 2016 hearing on the motion, Lake's counsel asserted that Dr. Pedro removed the wrong mole and should have noticed the other malignant mole too. He argued that Lake's damages were the cost of the extra surgery and the extra time she had to wait for the surgical site to heal before the second surgery, when she worried about an aggressive cancer on her neck behind her ear. The trial court sustained Dr. Pedro's objections but denied his motion to dismiss and granted Lake a thirty-day extension to cure her report's deficiencies under civil practice and remedies code section 74.351(c). At the conclusion of the hearing, the trial court stated,

> Here's what I want to do. Have this guy clean up his report, and let's figure out what this really is. I want him to distinguish between the two clearly what he is saying, because I can't tell if he's saying he took the wrong one or didn't take the wrong one.

On November 10, 2016, Lake filed a supplement to her original expert report. The supplement repeated the same paragraphs set out above and adds, "In summary, Dr. Pedro removed the incorrect lesion on Sherrie Lake."

Dr. Pedro objected to Lake's supplemental expert report, complaining that the only difference between the initial expert report and the supplemental report was the additional sentence, which failed to establish the statutorily required

4

elements of standards of care, breach, causation, and injury applicable to him, and he again moved to dismiss Lake's claim.

At the hearing on the motion to dismiss, Dr. Pedro's counsel complained to the trial court,

> The problem in the supplemental expert report is you gave the plaintiff's counsel . . . a simple instruction. Clear up what happened. Clear up whether there were two spots and you missed one or there was only one spot and you missed that.
>
> The supplemental expert report did not follow your simple instructions. The supplemental expert report has facts supporting two spots, the one that was biopsied, the one that he excised, and then the pathology report of the excision, you see the biopsy spot, the healing biopsy spot in that, which means there were two spots.
>
> . . . .
>
> . . . The report concludes there was only one spot, that he missed the spot, but it doesn't follow the facts. We have facts over here. We have an opinion over here. The supplemental report muddies the waters.

The trial court overruled Dr. Pedro's objections and denied his motion to dismiss.

### III. Discussion

The purpose of the expert report required by civil practice and remedies code section 74.351 is to inform the defendant of the specific conduct that the plaintiff has called into question and to provide a basis for the trial court to conclude that the plaintiff's claims have merit. *Merry v. Wilson*, 498 S.W.3d 270, 275 (Tex. App.—Fort Worth 2016, no pet.) (citing *Farishta v. Tenet Healthsys. Hosps. Dallas, Inc.*, 224 S.W.3d 448, 453 (Tex. App.—Fort Worth 2007, no pet.)).

While a plaintiff need not present evidence in the report as if she were actually litigating the merits of her case, the report must contain sufficiently specific information to demonstrate causation beyond mere conjecture. *Id.* We review a trial court's decision to grant or deny a motion to dismiss under section 74.351 for an abuse of discretion. *See id.* at 272; *see also Samlowski v. Wooten*, 332 S.W.3d 404, 411 (Tex. 2011) ("The overriding principle guiding trial court discretion under section 74.351(c) [30–day extension] . . . is the elimination of frivolous claims and the preservation of meritorious ones. An adequate expert report is how the statute distinguishes between the two.").

In his sole issue, Dr. Pedro complains that the trial court erred by denying his motion to dismiss because Lake's report, among other things, fails to establish the applicable standard of care, breach, and causation.[2] Lake responds that her supplemental expert report established the causal link between Dr. Pedro's acts or omissions and the harm she suffered from the delay in treatment and establishes that Dr. Pedro breached the standard of care by failing to diagnose and treat the basal cell carcinoma.

An expert report is deficient if it does not represent an objective good faith effort to comply with the statutory requirements. *Gower v. Univ. Behavioral Health of Denton*, No. 02-16-00245-CV, 2017 WL 3081153, at *6 (Tex. App.—

---

[2]Dr. Pedro also argues that Lake's expert report fails to support the only theory of liability that she pleaded against him and, in fact, affirmatively negates it and that it does not support any potential alternative theories of liability for any unpleaded claims.

Fort Worth July 20, 2017, no pet.) (mem. op.) (citing Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a)–(b), (*l*)). The health care liability claim statute requires an "expert report" to be a written report that "provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (defining "Expert report"). An expert report cannot merely state the expert's conclusions about the statutorily required elements; rather, the expert must explain the basis of his statements to link his conclusions to the facts. *Windsor v. Maxwell*, 121 S.W.3d 42, 47 (Tex. App.—Fort Worth 2003, pet. denied) (citing *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)). "A causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm and that absent said act or omission, the harm would not have occurred." *Estorque v. Schafer*, 302 S.W.3d 19, 28 (Tex. App.—Fort Worth 2009, no pet.). "The expert report must explain how the alleged breach caused the harm or injury." *Id.*

When reviewing the adequacy of a report, the only information relevant to the inquiry is the information contained within the four corners of the document, and this requirement precludes a court from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended. *Gower*, 2017 WL 3081153, at *6.

On its face, Lake's original expert report and its one-sentence supplement do not suffice to establish that Dr. Pedro breached a medical duty to Lake because Lake's expert's statement that the wrong cancerous lesion was removed is not linked to any underlying facts and is directly contradicted by other facts stated in the report that Dr. Pedro, in fact, removed the cancerous lesion in December that he had previously biopsied in November. Specifically, the expert report states that Dr. Pedro performed a biopsy in November 2013 and that the cancerous lesion removed from Lake in December 2013 had a pathology diagnosis of "'*healing* biopsy site with early dermal scarring (history of basal cell carcinoma), *totally* excised.'" [Emphasis added.] These facts stated in the original expert report therefore conflict with the expert's supplemental statement that Dr. Pedro removed the incorrect lesion.

Additionally, nothing in the expert report indicates that the cancerous lesion removed in June 2014 was present when Dr. Pedro diagnosed in November 2013 the cancerous lesion that he removed from Lake in December 2013. According to the report, a subsequent appointment with her primary care physician led to "concern about a lesion on the right occipital scalp that was *near* the initial biopsy and excision site," leading to another biopsy in January 2014 from a location "*adjacent* to the previous excision." [Emphasis added.] There is nothing in the expert report to indicate the time frame in which a cancerous lesion can manifest. There is also nothing about the length of time required to heal between surgeries other than to express that "the additional surgery that was

required could have been scheduled and occurred in a timelier manner," instead of causing Lake's "emotional and financial burdens associated with not diagnosing and treating this basal cell carcinoma on the scalp." *See, e.g.*, *Foster v. Richardson*, 303 S.W.3d 833, 842 (Tex. App.—Fort Worth 2009, no pet.) (noting that the expert report failed to explain "beyond mere conjecture how the condition of Richardson's ankle worsened from June 2007 to July [2007] so that Dr. Foster's failure to give a correct diagnosis in June caused the requirement of further treatment in July that would not have otherwise been required if Dr. Foster had correctly diagnosed the injury"); *Estorque*, 302 S.W.3d at 28–29 (observing that the expert's deficient report did not explain the basis of his opinions as to causation when it left gaps by not explaining how or why the physicians' failure to consult a urologist or gynecologist caused worsening or progression of the patient's listed conditions); *cf. Sison v. Andrew M.*, No. 02-16-00129-CV, 2017 WL 3974356, at *13 (Tex. App.—Fort Worth Sept. 7, 2017, no pet. h.) (mem. op.) (explaining that amended expert report provided a fair summary of expert's causation opinion, adequately linked his opinion to the facts, and explained that the patient's "painful, swollen, left testicle would more likely than not have been saved if [the defendant] had adhered to the appropriate standards of care in her examination of [the] left testicle because in spite of [the patient's] typical presentation for testicular torsion, [the defendant] failed to properly evaluate and examine [the patient] and . . . this negligence 'was a proximate cause' of [the patient's] inability to obtain proper medical attention for his testicular torsion,

9

which was emergent at the time [the defendant] saw him on March 28, 2013"); *Polone v. Shearer*, 287 S.W.3d 229, 236 (Tex. App.—Fort Worth 2009, no pet.) (holding that expert reports were sufficient with regard to causation when one expert opined that the patient's breast cancer was present "for at least 22 months prior to biopsy confirmation, and the delay in diagnosis was a direct consequence of [the doctors'] failing to meet the standards of medical care" when during that 22 months, "there [was] documented evidence of progressive growth and development of her breast cancer," and the failure to meet the standard of timely diagnosis increased the patient's risk of metastatic breast cancer and subsequent morbidity and mortality, and the other expert opined that her breast cancer could have been treated, if timely diagnosed, "without the necessity of mastectomies").

Accordingly, because nothing in the report establishes a breach or a causal connection between any alleged negligence of Dr. Pedro and Lake's purported damages, we conclude that the trial court abused its discretion by denying Dr. Pedro's motion to dismiss. We sustain Dr. Pedro's sole issue without reaching his remaining arguments.

## IV. Conclusion

Having sustained Dr. Pedro's sole issue, we reverse the trial court's order denying his motion to dismiss, render judgment dismissing the health care liability claim with prejudice, and remand the case to the trial court for it to assess

reasonable attorney's fees and court costs incurred by Dr. Pedro.  *See* Tex. Civ.

Prac. & Rem. Code Ann. § 74.351(b)(1)–(2); Tex. R. App. P. 43.2(c), (d).

/s/ Bonnie Sudderth

BONNIE SUDDERTH
JUSTICE

PANEL:  MEIER, SUDDERTH, and PITTMAN, JJ.

DELIVERED:  September 28, 2017