

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
### FORT WORTH

---

**NO. 2-06-105-CV**

---

CENTER FOR NEUROLOGICAL DISORDERS, P.A.
AND GREGORY A. WARD, M.D.                                    APPELLANTS

V.

ROGER P. GEORGE AND JULIET A. GEORGE                         APPELLEES

------------

FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION ON REMAND

------------

Appellants Center for Neurological Disorders, P.A. ("CND") and Gregory

A. Ward, M.D. appeal from the trial court's denial of their motions to dismiss

the claims of Appellees Roger P. George and Juliet A. George with prejudice.

Originally, we dismissed this appeal for want of jurisdiction.[1]  Because the

---

[1] *Ctr. for Neurological Disorders, P.A. v. George*, 253 S.W.3d 289, 290
(Tex. App.—Fort Worth 2007) (mem. op.), *rev'd*, 253 S.W.3d 217 (Tex. 2008).

Texas Supreme Court has instructed us that we do have jurisdiction,[2] we now consider the appeal on the merits.

In five issues, CND and Dr. Ward argue that (1) the trial court's denial of the motions to dismiss should be reviewed under a de novo standard; (2) the trial court erred by denying the motion to dismiss because the Georges' expert report does not meet the statutory requirements of an expert report with respect to claims against Dr. Ward; (3) all direct liability claims against CND must be dismissed with prejudice because the report omits any reference to negligence by CND independent of Dr. Ward's negligence; (4) all vicarious liability claims against CND must be dismissed with prejudice because the report alleges only Dr. Ward's negligence and omits any reference to negligence by any other physicians or health care providers affiliated with CND; and (5) the proper remedy is reversal and rendition. Because we hold that the report does not represent an objective good faith effort to comply with the statutory requirements of an expert report with respect to the Georges' claims that are based on the esophageal perforation, the claims that are based on the alleged negligence of Dr. Ward before and during the first surgery, or the claim against CND for failure to supervise, and because we conclude that the proper remedy on reversal is remand, we reverse as to these claims and remand them to the

---

[2] *George*, 253 S.W.3d at 217.

2

trial court for consideration of whether to grant the Georges time to cure the report's deficiencies in those areas. Because we hold that CND did not preserve its complaints regarding the Georges' vicarious liability and direct liability claims based on the acts of employees and agents other than Dr. Ward, we affirm as to those claims. Because we hold that the Georges' expert report represents an objective good faith effort to comply with the statutory requirements of an expert report on the Georges' direct negligence claims against Dr. Ward, with the exception of the esophageal perforation claims and their claims that are based on Dr. Ward's actions before and during the first surgery, we affirm as to those claims. We therefore also affirm as to the Georges' vicarious liability claims that are based on Dr. Ward's negligence, with the exception of the esophageal perforation claims and their claims that are based on Dr. Ward's actions before and during the first surgery.

### BACKGROUND FACTS

In 1987, before the events giving rise to the underlying lawsuit, Mr. George underwent an anterior cervical discectomy and fusion for shoulder and arm pain after a neck injury. Then in 2003, Mr. George went to Dr. Ward complaining of numbness and pain in both arms and hands and in his left leg; he also complained of a diminished grip. Dr. Ward is a physician with offices at CND, and his practice includes neurosurgery.

3

Radiographic studies showed some postoperative changes, spondylosis, stenosis, and pseudoarthrosis in the cervical spine. On Dr. Ward's recommendation, Mr. George underwent surgery performed by Dr. Ward. Mr. George developed postoperative complications, including the inability to move his left hand and leg and general weakness on his left side, and the loss of sensation in his right leg. As a result, Mr. George received first an MRI scan and then a CT scan. After the CT scan, Dr. Ward diagnosed postoperative hematoma, initiated high dose steroid therapy, and performed a procedure to drain the hematoma. After the second surgery, Mr. George continued to experience neurological deficits in his left leg and arm.

On September 8, 2003, Mr. George called Dr. Ward and reported difficulty swallowing. Examination revealed a fistula from Mr. George's esophagus into his right neck. Mr. George was again admitted to the hospital and a Dr. Tran evaluated Mr. George's condition. Dr. Tran considered surgery to be too risky, and Mr. George was sent home with IV therapy plus Sandostatin injections and insulin injections. Examination on September 19, 2003, revealed that the fistula had closed.

Mr. George continued to experience numbness on his right side and partial paralysis in his left hand. Dr. Ward examined Mr. George on October 21, 2003, and told Mr. George that he had Brown-Sequard Syndrome and that it could

4

take many months to recover. Mr. George claims that since that time his neurological condition has not significantly improved.

The Georges filed health care liability claims against Dr. Ward and CND on September 16, 2005, and an amended petition on November 09, 2005. They alleged that Dr. Ward breached his duty of ordinary care and his duty to act as a neurosurgeon of reasonable and ordinary prudence in his "diagnosis, assessment, care, and treatment of Roger George's cervical spine and related conditions, and/or management or supervision of such medical and/or health care diagnosis, assessment, care[,] and treatment." Specifically, they claimed that he breached his duty by:

• failing to provide timely, proper, and adequate medical and surgical diagnosis, assessment, care, and treatment of Mr. George's cervical spinal conditions and injuries, of his other medical conditions, and to Mr. George before and after Mr. George's two spine surgeries;

• engaging "in other acts or omissions" departing from the standard of medical care in his diagnosis, assessment, care, and treatment of Mr. George's cervical spine conditions and injuries, Mr. George's postoperative esophageal injuries, and other medical conditions;

• failing to provide, by and through his employees, servants, or agents, health care assessment, testing, evaluation, care, and therapy to Mr.

5

George for his cervical spine conditions and other associated medical conditions;

- individually, or by and through Dr. Ward's employees, servants, or agents, engaging in other acts and omissions departing from the accepted standards of medical care with respect to Mr. George's spinal conditions, postoperative esophageal injuries or conditions, and other injuries or conditions; and

They further alleged that Dr. Ward's conduct amounted to gross negligence. They also asserted both direct and vicarious theories of liability against CND.

On January 14, 2006, the Georges served Dr. Ward and CND the expert report required under section 74.351 of the Texas Civil Practice and Remedies Code. The report of Dr. Isabelle Richmond states that Mr. George's postoperative conditions indicated the presence of an epidural hematoma, that Dr. Ward's four-and-a-half hour delay in initiating high dose steroid therapy and surgical drainage of the hematoma deviated from the standard of medical care, and that these deviations "in all reasonable medical probability caused Mr. George to sustain a permanent spinal cord injury."

Dr. Ward and CND filed motions to dismiss the Georges' claims with prejudice under section 74.351 of the civil practice and remedies code,

6

challenging the sufficiency of Dr. Richmond's report.  After a hearing, the trial court denied their motions, and Dr. Ward and CND filed this appeal.

**ANALYSIS**

**Proper Standard of Review**

In reviewing a trial court's decision on a motion to dismiss a claim arising under former article 4590i of the revised civil statutes, the predecessor to section 74.351,[3] the Texas Supreme Court applied an abuse of discretion standard.[4]  In their first issue, CND and Dr. Ward claim that under the current version of the statute, a de novo standard of review applies.  Some commentators have expressed doubt as to whether the abuse of discretion standard still applies,[5] but courts of appeals reviewing health care liability claims under section 74.351 have continued to apply that standard.[6]  Accordingly,

---

[3] Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (recodified at TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (Vernon 2005) (effective Sept. 1, 2003)).  For ease of reference, in the remainder of this opinion, we refer to this statute as former article 4590i.

[4] *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877–78 (Tex. 2001) (applying abuse of discretion standard to former article 4590i).

[5] *See Kendrick v. Garcia*, 171 S.W.3d 698, 702–03 (Tex. App.—Eastland 2005, pet. denied); George C. Hanks, Jr. & Rachel Polinger-Hyman, *Redefining the Battlefield*, 67 TEX. B.J. 936, 943 (2004).

[6] *See Mokkala v. Mead*, 178 S.W.3d 66, 70 (Tex. App.—Houston [14th Dist.] 2005, pet. granted); *Kendrick*, 171 S.W.3d at 702–03.

absent any controlling authority applying a de novo standard, we review a trial court's determination as to the adequacy of an expert report under section 74.351 for abuse of discretion.[7] We overrule CND and Dr. Ward's first issue.

To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.[8] Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.[9] But a trial court has no discretion in determining what the law is or in applying the law to the facts, and thus "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion."[10]

---

[7] *See Palacios*, 46 S.W.3d at 877–78; *Kendrick*, 171 S.W.3d at 702–03; *Mokkala*, 178 S.W.3d at 70.

[8] *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986).

[9] *Id*.

[10] *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Ehrlich v. Miles*, 144 S.W.3d 620, 624 (Tex. App.—Fort Worth 2004, pet. denied).

**Sufficiency of the Expert Report as to Dr. Ward**

In their second issue, CND and Dr. Ward argue that Dr. Richmond's report does not meet the statutory good faith requirement, and the trial court therefore erred in failing to dismiss the Georges' claims against Dr. Ward with prejudice.

In a health care liability claim, a claimant must serve an expert report on each defendant no later than the 120th day after the claim is filed.[11] Under section 74.351(b), if an expert report has not been served on a defendant physician or health care provider within the 120-day period, then on the motion of the affected physician or health care provider, the trial court must dismiss the claim with prejudice.[12] The words "has not been served" include cases in which a report has been served but found deficient by the trial court.[13] Subsection (b) is made subject to subsection (c), which provides that when no report has been served because the report that was served was found to be inadequate, the trial court has discretion to grant one thirty-day extension to allow the claimant to cure the deficiency.[14] Unlike under former article 4590i,

---

[11] TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a).

[12] *Id.* § 74.351(b).

[13] *Lewis v. Funderburk*, 253 S.W.3d 204, 207–08 (Tex. 2008).

[14] TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c); *Leland v. Brandal*, 217 S.W.3d 60, 64–65 (Tex. App.—San Antonio 2006), *aff'd*, No. 06-1028, 2008 WL 2404958 (Tex. Jun. 13, 2008).

9

a trial court may not grant an extension for any other reason absent an agreement of the parties.[15]

A defendant may challenge the adequacy of a report, and the trial court must grant the motion to dismiss if it finds, after a hearing, that "the report does not represent an objective good faith effort to comply with the definition of an expert report" in the statute.[16] While the expert report "need not marshal all the plaintiff's proof,"[17] it must provide a fair summary of the expert's opinions as to the "applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed."[18] To constitute a good-faith effort, the report must "discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit."[19] A report does not fulfill this requirement if it merely states the expert's

---

[15] *Thoyakulathu v. Brennan*, 192 S.W.3d 849, 852 (Tex. App.—Texarkana 2006, no pet.).

[16] TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*).

[17] *Palacios*, 46 S.W.3d at 878 (construing former art. 4590i, § 13.01).

[18] TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6).

[19] *Palacios*, 46 S.W.2d at 875.

conclusions or if it omits any of the statutory requirements.[20]  The information in the report "does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial."[21]

We agree with CND and Dr. Ward that Dr. Richmond's report did not constitute a good faith effort with respect to CND and Dr. Ward's alleged negligence in the recognition and investigation of Mr. George's esophageal perforation or in his diagnosis, care, and treatment of Mr. George before and during the first surgery.  The report did not provide any standard of care for the treatment of esophageal perforation, did not describe how any actions or omissions of Dr. Ward or another physician failed to meet the standard of care, or give an opinion as to causation or damages.  With respect to claims based on Dr. Ward's actions before and during the first surgery, the report says only that "Dr. Ward was required to properly perform the anterior cervical fusion with application of an anterior cervical plate in a technically competent fashion."  The report therefore does not inform CND and Dr. Ward of the specific conduct that the Georges have called into question or provide a basis

---

[20] *Id.* at 879.

[21] *Id.*

for the trial court to conclude that the claims have merit, and thus it does not constitute a good faith effort with respect to these claims.[22]

With respect to the Georges' other claims against Dr. Ward, however, Dr. Richmond's report does constitute a good faith effort under the statute. On page four of her report, Dr. Richmond gives her opinion of the applicable standard of care as to the Georges' other claims: Dr. Ward "was required to properly perform the anterior cervical fusion with application of an anterior cervical plate in a technically competent fashion," as well as "provide timely and proper postoperative surveillance and treatment" of Mr. George. Dr. Richmond gives the applicable postoperative standard of care as requiring Dr. Ward to "monitor and promptly investigate and treat any new onset of neurological deficit experienced by Mr. George."

Dr. Richmond's report then states her opinion of the manner in which Dr. Ward breached the standard of care. According to Dr. Richmond's report, Dr. Ward "did not timely treat and investigate Mr. George's new onset neurologic deficit." Dr. Ward "should have immediately initiated and performed surgical drainage of the hematoma" after receiving the MRI scan results. Dr. Richmond gives her further opinion that after the MRI scan, the CT scan of Mr. George was unnecessary to diagnose the spinal cord compression, and it

---

[22] *See id.* at 875.

12

inappropriately further delayed Mr. George's treatment. Finally, her report states that the high dose steroid protocol was not timely initiated because it was not initiated until almost four hours after Mr. George's spinal cord injury "was or should have been clinically evident to Dr. Ward."

The report also represents a good-faith effort to summarize the causal relationship between Dr. Ward's failure to meet the applicable standards of care and Mr. George's injury.[23] Dr. Richmond states that epidural spinal hematoma "is the most common neurosurgical complication of spinal surgery producing new onset neurological deficit," and that "[i]f not diagnosed and treated promptly, it can result in severe and permanent spinal cord injury." She also states that "[p]rompt administration of high dose steroid therapy is known to reduce the severity of spinal cord injury if given in a timely manner." She further states that the "epidural hematoma produces spinal cord damage by putting pressure on the spinal cord and reducing tissue perfusion" and that "prompt surgical drainage of the hematoma would have reduced the pressure much earlier and lessened the degree of spinal cord damage." In her opinion, the delay in the initiation of the high dose steroid therapy and the drainage of the

---

[23] *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002) (stating that an expert report cannot be conclusory and must make a good-faith effort to summarize the causal relationship between the alleged breach of the standard of care and the alleged injury).

hematoma were deviations from the standard of medical care that "in all reasonable medical probability caused Mr. George to sustain a permanent spinal cord injury," and "the severity of his permanent spinal cord injury probably would have been reduced" if he had received the proper treatment earlier. Dr. Richmond asserts that Dr. Ward failed to take actions that are known to be effective if timely performed. She explains that by failing to take these actions, Dr. Ward allowed the continuation of a condition that can cause severe and permanent injury of the type complained of by Mr. George. These assertions by Dr. Richmond are not merely conclusory and make a good-faith effort to summarize the causal relationship between Dr. Ward's negligence and Mr. George's spinal injury.

Because we hold that with the exception of claims relating to Mr. George's esophageal perforation and to alleged negligence by Dr. Ward before and during the first surgery, Dr. Richmond's report discusses the standard of care, breach, and causation with sufficient specificity to inform Dr. Ward of the conduct that the Georges have called into question and to provide a basis for the trial court to conclude whether the claims have merit, we overrule CND and Dr. Ward's second issue as to all claims against Dr. Ward except those relating to the esophageal perforation and to Dr. Ward's alleged negligence before and during the first surgery.

14

**Sufficiency of Dr. Richmond's Report as to CND**

*Direct Liability of CND*

In their third issue, CND and Dr. Ward assert that the trial court should have dismissed the Georges' claims that are based on CND's direct liability because Dr. Richmond's report makes no attempt to address any of the Georges' allegations of direct liability. The Georges' pleadings allege two grounds of direct liability against CND: (1) CND failed to "timely, properly, safely, or adequately govern or supervise the quality of medical, surgical[,] and health care services to and for Roger George" ("failure to supervise") and (2) CND directly and through its employees or agents engaged in acts or omissions departing from the applicable standard of care. We first address the failure to supervise claim.

Neither party disputes that the failure to supervise claim is a health care liability claim. Thus, the Georges' were required to provide an expert report on this claim or face having the claim dismissed with prejudice.[24] Dr. Richmond's report does include her opinion as to the standard of care applicable to CND, but only in the context of CND's provision of medical services through Dr. Ward. In her paragraph setting out the standard of care, Dr. Richmond states only that "[CND], by and through . . . Dr. Ward, was responsible for meeting

---

[24] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b).

15

the reasonable, prudent, and accepted standards of health care" in the treatment of Mr. George, and that Dr. Ward provided medical care to Mr. George "in the course and scope of employment with [CND] and in furtherance of [CND]'s business." This language clearly supports a claim for CND's vicarious liability for Dr. Ward's alleged negligence, but it fails to establish a separate standard of care applicable to a professional association of neurosurgeons.[25]

When discussing CND's breach of the standard of care, the report states that CND, through Dr. Ward, "failed to provide medical services to Mr. George in a reasonable prudent manner," and again states that Dr. Ward provided medical services to Mr. George in the scope of Dr. Ward's employment with CND and in furtherance of CND's business. The report does not state any specific conduct of CND that violated any applicable standard of care; the report here addresses only CND's vicarious liability for any negligence of Dr. Ward. Because Dr. Richmond's report does not state a standard of care applicable to CND or state with specificity any conduct of CND that breached an applicable standard of care, the report does not make a good faith effort to

_____

[25] *See, e.g., Carl J. Battaglia, M.D., P.A. v. Alexander*, 177 S.W.3d 893, 899 (Tex. 2005) ("Determining the standard of care demanded from a professional association of anesthesiologists in providing anesthesiology services 'requires skills not ordinarily possessed by lay persons.'") (quoting *St. John v. Pope*, 901 S.W.2d 420, 423 (Tex. 1995)).

16

comply with section 74.351 as to CND's failure to supervise, and the trial court abused its discretion in finding otherwise. We therefore sustain CND and Dr. Ward's third issue as to the Georges' failure to supervise claim.

CND also asserts in its brief that Dr. Richmond's report does not sufficiently address, and therefore the trial court erred by not dismissing with prejudice, the Georges' claim that CND directly and through its employees or agents engaged in acts or omissions departing from the applicable standard of care. The complaint on appeal must be the same as that presented in the trial court.[26] An appellate court cannot reverse based on a complaint not raised in the trial court.[27] CND did not present this argument to the trial court; its motion to dismiss discussed only the failure to supervise claim. We therefore do not address this issue because CND did not preserve it below.[28] Accordingly, we overrule CND and Dr. Ward's third issue with respect to this claim.

---

[26] *Banda v. Garcia,* 955 S.W.2d 270, 272 (Tex. 1997); *Tex. Dep't of Pub. Safety v. Bond*, 955 S.W.2d 441, 448 (Tex. App.—Fort Worth 1997, no pet.).

[27] *Banda,* 955 S.W.2d at 272.

[28] *See* TEX. R. APP. P. 33.1; *see also Alvarez v. Thomas*, 172 S.W.3d 298, 302 (Tex. App.—Texarkana 2005, no pet.) (refusing to consider alternate grounds for overruling motion to dismiss when such grounds were not raised in trial court and stating that "[i]t would be improper to conclude the trial court erred on an issue that was not presented to it").

17

*Vicarious Liability of CND*

Under their fourth issue, CND and Dr. Ward argue that all vicarious liability claims against CND must be dismissed with prejudice. The Georges made claims against CND based on two grounds of vicarious liability, one based on the alleged negligence of Dr. Ward and another based on the alleged negligence of other physicians and health care providers employed by or acting as agents for CND. CND first argues that the trial court erred by not dismissing with prejudice the vicarious liability claims based on Dr. Ward's alleged negligence because the expert report was insufficient to sustain any claims against Dr. Ward. Under section 24 of the Professional Association Act, the negligence of a professional association's employee is imputed to the association,[29] as CND and Dr. Ward recognize in their brief. Thus, if the expert report is sufficient as to the claims against Dr. Ward, and we have held that it is except as to the claims relating to the esophageal perforation and to acts of Dr. Ward before and during the first surgery, then the report is sufficient as to claims against CND that are based on Dr. Ward's alleged negligence.[30]

CND also argues that the trial court erred by failing to find that Dr. Richmond's report was insufficient to support the vicarious liability claims based

---

[29] TEX. REV. CIV. STAT. ANN. art. 1528f, § 24 (Vernon 2003); *Battaglia*, 177 S.W.3d at 902.

[30] *See* TEX. REV. CIV. STAT. ANN. art. 1528f, § 24.

18

on the alleged negligence of physicians and health care providers other than Dr. Ward. CND did not make this argument to the trial court. CND thus did not preserve this issue for appeal.[31] We therefore overrule CND and Dr. Ward's fourth issue, except to the extent that the Georges' make any vicarious liability claims based on Dr. Ward's alleged negligence with respect to the esophageal perforation and his alleged negligence before and during the first surgery.

**Proper Remedy on Reversal**

In their final issue, CND and Dr. Ward argue that rendition is the appropriate remedy on reversal. In the Georges' response to CND and Dr. Ward's motion to dismiss, they had asked the trial court, should the court find their expert report to be deficient, to grant them the thirty-day extension available under section 74.351(c). CND and Dr. Ward maintain that the Georges could have corrected any defects in the report before the hearing on the motions to dismiss and thus should not now have the opportunity to cure any deficiency. They further argue that to remand any claims to the trial court would render futile the interlocutory appeal remedy.

Section 74.351 provides that if a claimant is found not to have served the expert report within the 120-day time period because the elements of the report are deficient, the trial court has discretion to grant a thirty-day extension to the

---

[31] *See Alvarez*, 172 S.W.3d at 302.

19

claimant to cure the deficiency.[32]  The dismissal remedy under subsection 74.351(b) is expressly made "subject to" subsection 74.351(c), and thus the legislature intended that the right to have a claim dismissed under the subsection be limited by the trial court's ability to grant an extension of time to cure any deficiencies.[33]  Further, the trial court cannot grant an extension unless and until it finds the report to be deficient.[34]  Since the parties filed their briefs in this case, the Texas Supreme Court has addressed the issue of whether remand is appropriate.  In *Leland*, after stating that a defendant may challenge by interlocutory appeal a trial court's determination that a report is adequate, the court held that "section 74.351's plain language permits one thirty-day extension when the court of appeals finds deficient a report that the trial court considered adequate."[35]  Accordingly, we hold that for purposes of determining the proper remedy on reversal it is irrelevant whether the Georges had the opportunity to cure the report's deficiency before the trial court ruled on the

---

[32] TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c).

[33] *Leland*, 217 S.W.3d at 64–65.

[34] *See Maxwell v. Elkins*, 197 S.W.3d 858, 861 (Tex. App.—Eastland 2006, pet. denied) (holding that the trial court, in granting the claimant a thirty-day extension, "necessarily gave consideration to the adequacy of the report" because the court otherwise would have no reason to grant the extension).

[35] *See Leland*, 2008 WL 2404958, at *3.

motion to dismiss.[36]  We also overrule CND and Dr. Ward's argument that to remand any claims to the trial court would render futile the interlocutory appeal remedy.  We overrule CND and Dr. Ward's final issue.

## CONCLUSION

Having disposed of all of CND and Dr. Ward's issues, we reverse the part of the trial court's order as to the Georges' claims based on the esophageal perforation, as to claims based on negligence of Dr. Ward before and during the first surgery, and as to the Georges' claim against CND for failure to supervise, and we remand to the trial court the issue of whether to grant the Georges a thirty-day extension to cure the deficiencies in Dr. Richmond's expert report as to those claims.  We affirm the trial court's order as to all of the Georges' other claims.

LEE ANN DAUPHINOT
JUSTICE

PANEL B:   DAUPHINOT, GARDNER, and MCCOY, JJ.

DELIVERED:  July 10, 2008

---

[36] *See id.*

21