02-11-395-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00395-CV

 

 


 
 
 United Regional Health Care System AND Stuart
 Jackson Meyer, M.D.
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 Timothy Hardy and REnae Hardy
 
 
  
 
 
 APPELLEES
 
 


 

 

----------

FROM THE 30th
District Court OF Wichita COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Appellants
United Regional Health Care System (Hospital) and Stuart Jackson Meyer, M.D. (Meyer)
appeal from the trial court’s denial of their motions to dismiss the health
care liability claims of Appellees Timothy Hardy and Renae Hardy.  Hospita l and
Meyer both argue that the expert report filed by the Hardys is inadequate. 
Because we hold that the expert report was sufficient, we affirm.

Background

The Hardys
sued Hospital and Meyer based on Timothy Hardy’s treatment at Hospital in
December 2008.  Hardy, who was visiting family in Wichita Falls, became ill on
December 24, 2008, and went to the emergency room at Hospital.  Hardy
complained of extreme pain in the lower right quadrant of his abdomen, severe
nausea, vomiting for two days, and fever.  While at Hospital, his blood
pressure dropped steadily.  At Hardy’s initial assessment by the triage nurse,
his blood pressure was at 148/67.  Nurse Ryan Christensen took Hardy’s blood
pressure two hours later, and it had dropped to 113/48.  By the time that Nurse
Georgiana Talley took Hardy’s blood pressure at the time of his discharge, his
blood pressure had dropped to 97/62.

Meyer
treated Hardy at Hospital.  Meyer cancelled a urine culture that had been ordered
for Hardy and ordered a plain (non-contrast) X-ray of Hardy’s abdomen.  Meyer
ultimately diagnosed Hardy with a urinary tract infection (UTI).  Hardy was
given some prescriptions and sent home.

On
December 26, Hardy left Wichita Falls to drive back to his home in Nevada,
where he arrived on December 29.  On December 30, Hardy, who was still in pain,
went to the emergency room at a hospital in St. George, Utah, where he was
diagnosed with a ruptured appendix.  The infection from the rupture had spread
through his abdominal cavity and had eroded part of his colon.  Hardy had
surgery for the appendix, and part of his colon was removed.

On
December 22, 2010, Hardy and his wife Renae sued Hospital and Meyer.  In April
2011, the Hardys served Hospital and Meyer with an expert report by Dr. William
Frazier.  After Hospital and Meyer objected to the report as deficient, the
trial court signed an agreed order giving the Hardys a thirty-day extension to
cure the alleged deficiencies in the report.

The
Hardys filed a supplemental expert report by Dr. Frazier.  Hospital and Meyer then
filed motions to strike the report and motions to dismiss the Hardys’ claims.  Hospital
and Meyer both objected that Dr. Frazier’s report did not sufficiently provide
a causal connection between the alleged breaches of the standard of care and
the injuries that the Hardys complained of.

Meyer
also objected that Dr. Frazier did not establish that he was qualified to give
a causation opinion in this case, stating that “[t]hough his [curriculum vitae]
indicates that he is a practicing Emergency Medicine physician, it nowhere
gives any information that would establish that he is qualified to testify
regarding the cause of [Hardy’s] injuries and damages.”  At the hearing on the
motion to dismiss, Meyer’s attorney stated that Dr. Frazier was qualified to
opine about the standard of care for an emergency room physician, but that Dr.
Frazier was not qualified to say that “in all likelihood Mr. Hardy would or
should have undergone [an] appendectomy on December 24th, 2008, or soon
thereafter,” because Dr. Frazier is not a general surgeon.  The trial court
denied the motions to dismiss, and Hospital and Meyer now appeal.

Standard
of Review

We
review a trial court’s denial of a motion to dismiss under section 74.351 for an
abuse of discretion.[2]  We also review a trial
court’s determination of an expert’s qualifications for abuse of discretion.[3] 
To determine whether a trial court abused its discretion, we must decide
whether the trial court acted without reference to any guiding rules or
principles; in other words, we must decide whether the act was arbitrary or
unreasonable.[4]  An appellate court
cannot conclude that a trial court abused its discretion merely because the
appellate court would have ruled differently in the same circumstances.[5]

Expert
Report Requirements

In a
health care liability claim, a claimant must serve an expert report on each
defendant no later than the 120th day after the claim is filed.[6] 
The report must provide a fair summary of the expert’s opinions as to, among
other things, the causal relationship between (1) the health care provider’s
failure to meet the applicable standard of care and (2) the injury, harm, or
damages claimed.[7]  The trial court must
grant a defendant’s motion to dismiss challenging the adequacy of a report if
the court finds that “the report does not represent an objective good faith
effort to comply with the definition of an expert report” in the statute.[8]

To
constitute a good-faith effort with respect to causation, the report must
discuss causation with sufficient specificity to inform the defendant of the
conduct that the plaintiff has called into question and to provide a basis for
the trial court to conclude that the claims have merit.[9] 
A report cannot merely state the expert’s conclusions; instead, “the expert
must explain the basis of his [or her] statements to link his conclusions to
the facts.”[10]

An
expert’s qualifications in a health care liability suit must be determined
based solely on the report and the expert’s curriculum vitae.[11]  For purposes of section
74.351, a person testifying about a physician’s breach of the standard of care
is an “expert” if that person meets the requirements of section 74.401.[12] 
To qualify as an expert under that section, a person must be a physician who

(1) is practicing medicine at the time such testimony is
given or was practicing medicine at the time the claim arose; (2) has knowledge
of accepted standards of medical care for the diagnosis, care, or treatment of
the illness, injury, or condition involved in the claim; and (3) is
qualified on the basis of training or experience to offer an expert opinion
regarding those accepted standards of medical care.[13]

In
determining whether a witness is “qualified on the basis of training or
experience,” the trial court should determine whether the witness “is board certified
or has other substantial training or experience in an area of medical practice
relevant to the claim” and whether the witness “is actively practicing medicine
in rendering medical care services relevant to the claim.”[14] 
Thus, an expert’s qualification to opine on the applicable standard of care is “dictated
by the medical condition involved in the claim and by the expert’s familiarity
and experience with it, not by the defendant doctor’s area of expertise.”[15]

Dr.
Frazier’s Report Regarding Meyer

In
his sole issue on appeal, Meyer argues that the trial court abused its
discretion by denying his motion to dismiss because Dr. Frazier is not
qualified to render the causation opinions in his expert report and because Dr.
Frazier’s expert report is insufficient on the issue of causation.  We first
address the adequacy of the report as to causation.

In
his report, Dr. Frazier included the following assertions.  Hardy, an elderly
patient, had nausea, high fever, and severe right lower quadrant pain—which are
“textbook” appendicitis symptoms and are not symptoms of a UTI.  Hardy’s
symptoms clearly required hospitalization and IV antibiotics.  In addition, given
Hardy’s symptoms, a contrast X-ray should have been ordered.  Meyer should have
provided IV antibiotics, a surgical consultation, and immediate hospital
admission, and Meyer’s observations of Hardy’s symptoms should have been
reported on his written report and to a general surgeon.  Meyer did not take
any of these steps.  If Meyer had admitted Hardy, given antibiotics, recognized
the need for further radiological testing, further surgical consultations, and
hospitalization, Hardy would have been or should have been diagnosed with
appendicitis and an appendectomy would have been or should have been ordered. 
Because this was not done, Hardy’s appendicitis was not diagnosed and was
allowed to fester and develop into an abscess, resulting in Hardy’s injuries.  Dr.
Frazier adequately explains the basis of his statements regarding causation.  We
hold that this report represents a good-faith effort to state the causal
relationship between the alleged breaches of the standard of care and Hardy’s
injuries and is therefore sufficient as to causation.[16]

We
now consider Meyer’s argument that Dr. Frazier “was not qualified to opine as
to the course of treatment a surgeon would or should undertake” and that
“therefore, the trial court was required to strike such opinions.”  Meyer
argues that “Dr. Frazier does not establish any knowledge, training, or
experience in the area of general surgery, and more specifically the
indications for surgical removal of an appendix.”  He contends that Dr. Frazier
did not establish that he was qualified to opine “regarding what a surgeon
would have done if contacted and whether such contact with a surgeon in
probability would have led to a different result and/or avoided the damages
asserted in this matter.”

Dr.
Frazier stated in his report that for twenty-three years, his medical practice
has been devoted exclusively to emergency care medicine.  Regarding
appendicitis, the condition involved in the Hardys’ claim, Dr. Frazier stated

I have substantial
knowledge and experience in Emergency Care Medicine in the medical diagnosis,
care[,] and treatment of patients presenting with signs and symptoms of acute
appendicitis under circumstances like or similar to [Hardy].  On average, I
assess, examine, evaluate, and perform a differential diagnosis on
approximately two to four patients per shift who present with signs and
symptoms of acute appendicitis.

 

I have frequently
provided and currently provide the medical diagnosis, care[,] and treatment of
patients with acute appendicitis.

. . . .

I have substantial
knowledge of [the] reasonable, prudent[,] and accepted standards of medical
care for the diagnosis, care[,] and treatment of patients in the emergency care
setting with acute appendicitis under circumstances like or similar to [Hardy]
on or about 2008.

. . . .

[T]here are and were
certain minimum reasonable, prudent[,] and accepted medical practices that cannot
and could not vary among physicians and Emergency Medicine specialists for
the diagnosis, care[,] and treatment of patients in the emergency care setting
with acute appendicitis under circumstances like or similar to [Hardy] as of
2008.

. . . .

Based upon my education, training, and
experience, I am very familiar with the standard of medical care in the
emergency care setting for physicians, emergency care nurses, personnel[,] and
emergency care health care facilities concerning the diagnosis, treatment, and
assessment of patients in the emergency care setting, just like [Hardy],
presenting with the signs, symptoms[,] and complaints of acute appendicitis. [Emphasis
added.]

Dr.
Frazier’s curriculum vitae shows that he is licensed to practice medicine in
Texas, that he was practicing emergency care medicine at the time the claim
arose, and that he has been practicing emergency care for most of his career.  Dr.
Frazier’s report and curriculum vitae show that he practices health care in a
field that involves the same type of care or treatment as that delivered by
Meyer, that he has knowledge of accepted standards of care for health care
providers for the diagnosis, care, or treatment of acute appendicitis—including
whether surgery is the usual or accepted treatment for a patient with Hardy’s
symptoms—and that he was qualified to opine on Meyer’s breach of that standard
and on causation.[17]

Whether
Dr. Frazier showed that he was qualified to opine about the correct standard of
care for a surgeon in performing an appendectomy is irrelevant to the
Hardys’ claims.  We hold that the trial court did not abuse its discretion in
determining that Dr. Frazier is qualified to opine on the diagnosis, care, and
treatment of patients with signs and symptoms of acute appendicitis and, as
such, would be qualified to opine as to whether surgery is the usual or
accepted treatment for a patient with Hardy’s symptoms.  We overrule Meyer’s sole
issue.

Dr.
Frazier’s Report Regarding Hospital

In
Hospital’s sole issue, it argues that the trial court abused its discretion by
determining that Dr. Frazier’s supplemental expert report is sufficient as to
causation.

As
stated above, with respect to causation, the expert report must give the basis
of the expert’s opinion on causation, providing some explanation of how or why
the defendant’s breach of the standard of care caused the plaintiff’s injuries.[18] 
Hospital argues that Dr. Frazier’s report is inadequate as to causation because
it does not provide a causal link between the nurses’ alleged breach of duty
and Hardy’s injuries.  It argues that the report does not explain how the
injuries would not have occurred had the nurses not breached the standard of
care as alleged by Dr. Frazier.[19]  In its reply brief,
Hospital points out that Dr. Frazier “does not state that if the [n]urse[] had
questioned or reported [Meyer’s] orders, th[e]n [Meyer] would likely have
correctly diagnosed [Hardy].”

When
the physician providing the patient’s treatment misdiagnoses the patient and,
as a result, fails to provide the appropriate treatment, it is clear that the physician’s
misdiagnosis resulted in the delay of the appropriate treatment.  But it is not
as equally obvious when a nurse’s failure to recognize or report symptoms of a
condition results in the delay of appropriate treatment for the patient because
the nurse cannot authorize or provide the treatment.[20]
 An expert report linking a nurse’s breach of the standard of care to the delay
in treatment must explain how the breach caused or at least contributed to the
delay.  For example, did the doctor rely on the nurse’s erroneous notes in
making the diagnosis?  Does the health care facility have a policy by which a
nurse can report a doctor’s questionable orders to a third party with authority
to intervene in the patient’s treatment?  Would the nurse’s questioning of the
doctor about his orders probably cause the doctor to reconsider his diagnosis
and the treatment he ordered?

In
this case, Dr. Frazier’s report stated that the nurses should have reported
Hardy’s symptoms to “a designated representative” of Hospital and that they
should have ensured that Hospital had a protocol in place for reporting
questionable orders.  He also stated that the nurses should have reported
Hardy’s blood pressure drop to Meyer; should have ensured that Hospital had a
protocol in place for reporting questionable orders and that all nurses were
educated about the protocol; should have questioned Hardy’s discharge; and
should have questioned Meyer’s orders for the narcotic pain medications given
to Hardy.  Dr. Frazier stated that these failures to comply with the standard
of care resulted in the delay of the appropriate treatment for Hardy’s appendicitis.[21]
 And although this court cannot infer that, had the nurses reported the
questionable orders and Hardy’s dropping blood pressure to a “designated
representative” of Hospital, the appropriate treatment would have been ordered,
Dr. Frazier is permitted to make such an inference.[22] 
As we discussed above, the report adequately explains how the delay in Hardy’s
treatment resulted in his injuries.  The report discusses causation with
sufficient specificity to inform Hospital of the conduct that the Hardys have
called into question and provides a basis for the trial court to conclude that
the claims have merit.[23]  The report is therefore
adequate on causation with respect to Hospital.

Hospital
argues that the harm that Dr. Frazier stated had resulted from the delay in
Hardy’s treatment is in the section of the report directed at Meyer’s breach of
the standard of care.  Hospital is correct that in the part of the report
addressing Meyer’s actions, Dr. Frazier explained what harm resulted to Hardy
by the delay in the appropriate treatment.  But in the section addressing
Hospital’s actions, he again pointed out that because of the misdiagnosis,
Hardy’s appendicitis “was allowed to fester and develop into an
abscess/peritonitis with sigmoid colon perforation.”  We do not believe that
Dr. Frazier was required to repeat himself as to what further damages Hardy
suffered as a result of the festering and resulting abscess, and Hospital has
pointed us to no authority supporting an argument that he was required to do so.
 We overrule Hospital’s sole issue.

Conclusion

Having
overruled Meyer’s sole issue and Hospital’s sole issue, we affirm the trial
court’s order denying the motions to dismiss.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
DAUPHINOT,
MCCOY, and MEIER, JJ.

 

DELIVERED:  May 10, 2012









[1]See Tex. R. App. P. 47.4.





[2]Jernigan v. Langley,
195 S.W.3d 91, 93 (Tex. 2006); Benish v. Grottie, 281 S.W.3d 184, 190
(Tex. App.—Fort Worth 2009, pet. denied); Ctr. for Neurological Disorders,
P.A. v. George, 261 S.W.3d 285, 290–91 (Tex. App.—Fort Worth 2008, pet.
denied).





[3]Granbury Minor
Emergency Clinic v. Thiel, 296 S.W.3d 261, 266 (Tex. App.—Fort Worth 2009,
no pet.).





[4]Low v. Henry, 221
S.W.3d 609, 614 (Tex. 2007); Cire v. Cummings, 134 S.W.3d 835, 838–39
(Tex. 2004).





[5]E.I. du Pont de Nemours
& Co. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995); see also Low,
221 S.W.3d at 620.





[6]Tex. Civ. Prac. & Rem.
Code Ann. § 74.351(a) (West 2011).





[7]Id. § 74.351(r)(6).





[8]Id. § 74.351(l).





[9]Jelinek v. Casas,
328 S.W.3d 526, 539 (Tex. 2010); George, 261 S.W.3d at 291.





[10]Jelinek, 328
S.W.3d at 539.





[11]Estorque v. Schafer,
302 S.W.3d 19, 26 (Tex. App.—Fort Worth 2009, no pet.).





[12]Tex. Civ. Prac. &
Rem. Code Ann. §§ 74.351(r)(5), 74.401 (West 2011).





[13]Id. § 74.401(a)
(emphasis added).





[14]Id. § 74.401(c)
(emphasis added).





[15]Thiel, 296 S.W.3d
at 267.





[16]See George, 261
S.W.3d at 293.





[17]See Tex. Civ.
Prac. & Rem. Code Ann. § 74.401; Thiel, 296 S.W.3d at 267–68.





[18]See Estorque, 302
S.W.3d at 28 (holding that the expert report was insufficient in that it did
not explain the basis of the expert’s opinions as to causation, stating that “his
report leaves gaps by not explaining how or why the [defendant] physicians’
failure to consult a urologist or gynecologist caused worsening or progression
of [the plaintiff’s] listed conditions”).





[19]See Collini v.
Pustejovsky, 280 S.W.3d 456, 467–68 (Tex. App.—Fort Worth 2009, no pet.)
(holding that the expert report did not adequately address the link between the
alleged breach of the standard of care and the injury that allegedly resulted
to the patient because it did not provide any detail as to how the breach
contributed to the injury).





[20]See Tex. Occ. Code
Ann. § 301.004 (West Supp. 2011) (providing that the chapter of the occupations
code on nursing does not authorize the practice of medicine); see also
Methodist Hosp. v. German, No. 01-09-00925-CV, 2011 WL 6938521, at *8 (Tex.
App.—Houston [1st Dist.] Dec. 29, 2011, no pet.) (holding that “Texas law
specifies that it is the doctor, not the nurse, who draws medical conclusions
from the information observed and reported by the nurse” and stating that
“[o]nly doctors are legally authorized to make a medical diagnosis by
evaluating a patient’s medical treatment and the development of subsequent
symptoms to conclude that a particular medical condition has resulted”).





[21]Cf. Weatherford
Tex. Hosp. Co., LLC v. Riley, No. 02-10-00453-CV, 2011 WL 2518920, at *4
(Tex. App.—Fort Worth June 23, 2011) (holding expert report sufficient as to
causation when the doctor stated in his report that if the nurses had complied
with the standard of care, which, given the circumstances, required them to
advocate for a change in the medical plan by use of the hospital chain of
command, the child in the case would be have been delivered via c-section,
avoiding the brain injuries the child suffered during the vaginal delivery).





[22]See, e.g., id.
(stating that “section 74.351 does not prohibit experts, as opposed to
courts reviewing expert reports, from making inferences based on medical
history”).





[23]See Jelinek,
328 S.W.3d at 539; George, 261 S.W.3d at 292.