

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00395-CV

UNITED REGIONAL HEALTH CARE
SYSTEM AND STUART JACKSON
MEYER, M.D.
APPELLANTS

V.

TIMOTHY HARDY AND RENAE
HARDY
APPELLEES

----------

### FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellants United Regional Health Care System (Hospital) and Stuart Jackson Meyer, M.D. (Meyer) appeal from the trial court's denial of their motions to dismiss the health care liability claims of Appellees Timothy Hardy and Renae

---

[1]See Tex. R. App. P. 47.4.

Hardy.  Hospital and Meyer both argue that the expert report filed by the Hardys is inadequate.  Because we hold that the expert report was sufficient, we affirm.

**Background**

The Hardys sued Hospital and Meyer based on Timothy Hardy's treatment at Hospital in December 2008.  Hardy, who was visiting family in Wichita Falls, became ill on December 24, 2008, and went to the emergency room at Hospital.  Hardy complained of extreme pain in the lower right quadrant of his abdomen, severe nausea, vomiting for two days, and fever.  While at Hospital, his blood pressure dropped steadily.  At Hardy's initial assessment by the triage nurse, his blood pressure was at 148/67.  Nurse Ryan Christensen took Hardy's blood pressure two hours later, and it had dropped to 113/48.  By the time that Nurse Georgiana Talley took Hardy's blood pressure at the time of his discharge, his blood pressure had dropped to 97/62.

Meyer treated Hardy at Hospital.  Meyer cancelled a urine culture that had been ordered for Hardy and ordered a plain (non-contrast) X-ray of Hardy's abdomen.  Meyer ultimately diagnosed Hardy with a urinary tract infection (UTI).  Hardy was given some prescriptions and sent home.

On December 26, Hardy left Wichita Falls to drive back to his home in Nevada, where he arrived on December 29.  On December 30, Hardy, who was still in pain, went to the emergency room at a hospital in St. George, Utah, where he was diagnosed with a ruptured appendix.  The infection from the rupture had

spread through his abdominal cavity and had eroded part of his colon. Hardy had surgery for the appendix, and part of his colon was removed.

On December 22, 2010, Hardy and his wife Renae sued Hospital and Meyer. In April 2011, the Hardys served Hospital and Meyer with an expert report by Dr. William Frazier. After Hospital and Meyer objected to the report as deficient, the trial court signed an agreed order giving the Hardys a thirty-day extension to cure the alleged deficiencies in the report.

The Hardys filed a supplemental expert report by Dr. Frazier. Hospital and Meyer then filed motions to strike the report and motions to dismiss the Hardys' claims. Hospital and Meyer both objected that Dr. Frazier's report did not sufficiently provide a causal connection between the alleged breaches of the standard of care and the injuries that the Hardys complained of.

Meyer also objected that Dr. Frazier did not establish that he was qualified to give a causation opinion in this case, stating that "[t]hough his [curriculum vitae] indicates that he is a practicing Emergency Medicine physician, it nowhere gives any information that would establish that he is qualified to testify regarding the cause of [Hardy's] injuries and damages." At the hearing on the motion to dismiss, Meyer's attorney stated that Dr. Frazier was qualified to opine about the standard of care for an emergency room physician, but that Dr. Frazier was not qualified to say that "in all likelihood Mr. Hardy would or should have undergone [an] appendectomy on December 24th, 2008, or soon thereafter," because Dr.

3

Frazier is not a general surgeon.  The trial court denied the motions to dismiss, and Hospital and Meyer now appeal.

**Standard of Review**

We review a trial court's denial of a motion to dismiss under section 74.351 for an abuse of discretion.[2]  We also review a trial court's determination of an expert's qualifications for abuse of discretion.[3]  To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.[4]  An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances.[5]

---

[2]*Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Benish v. Grottie*, 281 S.W.3d 184, 190 (Tex. App.—Fort Worth 2009, pet. denied); *Ctr. for Neurological Disorders, P.A. v. George*, 261 S.W.3d 285, 290–91 (Tex. App.— Fort Worth 2008, pet. denied).

[3]*Granbury Minor Emergency Clinic v. Thiel*, 296 S.W.3d 261, 266 (Tex. App.—Fort Worth 2009, no pet.).

[4]*Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

[5]*E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620.

4

**Expert Report Requirements**

In a health care liability claim, a claimant must serve an expert report on each defendant no later than the 120th day after the claim is filed.[6] The report must provide a fair summary of the expert's opinions as to, among other things, the causal relationship between (1) the health care provider's failure to meet the applicable standard of care and (2) the injury, harm, or damages claimed.[7] The trial court must grant a defendant's motion to dismiss challenging the adequacy of a report if the court finds that "the report does not represent an objective good faith effort to comply with the definition of an expert report" in the statute.[8]

To constitute a good-faith effort with respect to causation, the report must discuss causation with sufficient specificity to inform the defendant of the conduct that the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit.[9] A report cannot merely state the expert's conclusions; instead, "the expert must explain the basis of his [or her] statements to link his conclusions to the facts."[10]

---

[6]Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (West 2011).

[7]*Id.* § 74.351(r)(6).

[8]*Id.* § 74.351(*l*).

[9]*Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010); *George*, 261 S.W.3d at 291.

[10]*Jelinek*, 328 S.W.3d at 539.

5

An expert's qualifications in a health care liability suit must be determined based solely on the report and the expert's curriculum vitae.[11]  For purposes of section 74.351, a person testifying about a physician's breach of the standard of care is an "expert" if that person meets the requirements of section 74.401.[12]  To qualify as an expert under that section, a person must be a physician who

> (1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose; (2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition *involved in the claim*; and (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.[13]

In determining whether a witness is "qualified on the basis of training or experience," the trial court should determine whether the witness "is board certified or has other substantial training or experience in an area of medical practice relevant to the claim" and whether the witness "is actively practicing medicine in rendering medical care services *relevant to the claim*."[14]  Thus, an expert's qualification to opine on the applicable standard of care is "dictated by

---

[11]*Estorque v. Schafer*, 302 S.W.3d 19, 26 (Tex. App.—Fort Worth 2009, no pet.).

[12]Tex. Civ. Prac. & Rem. Code Ann. §§ 74.351(r)(5), 74.401 (West 2011).

[13]*Id.* § 74.401(a) (emphasis added).

[14]*Id.* § 74.401(c) (emphasis added).

the medical condition involved in the claim and by the expert's familiarity and experience with it, not by the defendant doctor's area of expertise."[15]

**Dr. Frazier's Report Regarding Meyer**

In his sole issue on appeal, Meyer argues that the trial court abused its discretion by denying his motion to dismiss because Dr. Frazier is not qualified to render the causation opinions in his expert report and because Dr. Frazier's expert report is insufficient on the issue of causation. We first address the adequacy of the report as to causation.

In his report, Dr. Frazier included the following assertions. Hardy, an elderly patient, had nausea, high fever, and severe right lower quadrant pain—which are "textbook" appendicitis symptoms and are not symptoms of a UTI. Hardy's symptoms clearly required hospitalization and IV antibiotics. In addition, given Hardy's symptoms, a contrast X-ray should have been ordered. Meyer should have provided IV antibiotics, a surgical consultation, and immediate hospital admission, and Meyer's observations of Hardy's symptoms should have been reported on his written report and to a general surgeon. Meyer did not take any of these steps. If Meyer had admitted Hardy, given antibiotics, recognized the need for further radiological testing, further surgical consultations, and hospitalization, Hardy would have been or should have been diagnosed with appendicitis and an appendectomy would have been or should have been

---

[15]*Thiel*, 296 S.W.3d at 267.

7

ordered. Because this was not done, Hardy's appendicitis was not diagnosed and was allowed to fester and develop into an abscess, resulting in Hardy's injuries. Dr. Frazier adequately explains the basis of his statements regarding causation. We hold that this report represents a good-faith effort to state the causal relationship between the alleged breaches of the standard of care and Hardy's injuries and is therefore sufficient as to causation.[16]

We now consider Meyer's argument that Dr. Frazier "was not qualified to opine as to the course of treatment a surgeon would or should undertake" and that "therefore, the trial court was required to strike such opinions." Meyer argues that "Dr. Frazier does not establish any knowledge, training, or experience in the area of general surgery, and more specifically the indications for surgical removal of an appendix." He contends that Dr. Frazier did not establish that he was qualified to opine "regarding what a surgeon would have done if contacted and whether such contact with a surgeon in probability would have led to a different result and/or avoided the damages asserted in this matter."

Dr. Frazier stated in his report that for twenty-three years, his medical practice has been devoted exclusively to emergency care medicine. Regarding appendicitis, the condition involved in the Hardys' claim, Dr. Frazier stated

> I have substantial knowledge and experience in Emergency
> Care Medicine in the medical diagnosis, care[,] and treatment of

---

[16] *See George*, 261 S.W.3d at 293.

patients presenting with signs and symptoms of acute appendicitis under circumstances like or similar to [Hardy]. On average, I assess, examine, evaluate, and perform a differential diagnosis on approximately two to four patients per shift who present with signs and symptoms of acute appendicitis.

. . . .

I have frequently provided and currently provide the medical diagnosis, care[,] and treatment of patients with acute appendicitis.

. . . .

I have substantial knowledge of [the] reasonable, prudent[,] and accepted standards of medical care for the diagnosis, care[,] and treatment of patients in the emergency care setting with acute appendicitis under circumstances like or similar to [Hardy] on or about 2008.

. . . .

[T]here are and were certain minimum reasonable, prudent[,] and accepted medical practices that *cannot and could not vary* among physicians and Emergency Medicine specialists for the diagnosis, care[,] and treatment of patients in the emergency care setting with acute appendicitis under circumstances like or similar to [Hardy] as of 2008.

. . . .

Based upon my education, training, and experience, I am very familiar with the standard of medical care in the emergency care setting for physicians, emergency care nurses, personnel[,] and emergency care health care facilities concerning the diagnosis, treatment, and assessment of patients in the emergency care setting, just like [Hardy], presenting with the signs, symptoms[,] and complaints of acute appendicitis. [Emphasis added.]

Dr. Frazier's curriculum vitae shows that he is licensed to practice medicine in Texas, that he was practicing emergency care medicine at the time the claim arose, and that he has been practicing emergency care for most of his career. Dr. Frazier's report and curriculum vitae show that he practices health care in a field that involves the same type of care or treatment as that delivered by Meyer, that he has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of acute appendicitis—including

9

whether surgery is the usual or accepted treatment for a patient with Hardy's symptoms—and that he was qualified to opine on Meyer's breach of that standard and on causation.[17]

Whether Dr. Frazier showed that he was qualified to opine about the correct standard of care for a surgeon in *performing* an appendectomy is irrelevant to the Hardys' claims. We hold that the trial court did not abuse its discretion in determining that Dr. Frazier is qualified to opine on the diagnosis, care, and treatment of patients with signs and symptoms of acute appendicitis and, as such, would be qualified to opine as to whether surgery is the usual or accepted treatment for a patient with Hardy's symptoms. We overrule Meyer's sole issue.

**Dr. Frazier's Report Regarding Hospital**

In Hospital's sole issue, it argues that the trial court abused its discretion by determining that Dr. Frazier's supplemental expert report is sufficient as to causation.

As stated above, with respect to causation, the expert report must give the basis of the expert's opinion on causation, providing some explanation of how or why the defendant's breach of the standard of care caused the plaintiff's

---

[17] *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.401; *Thiel*, 296 S.W.3d at 267–68.

10

injuries.[18] Hospital argues that Dr. Frazier's report is inadequate as to causation because it does not provide a causal link between the nurses' alleged breach of duty and Hardy's injuries. It argues that the report does not explain how the injuries would not have occurred had the nurses not breached the standard of care as alleged by Dr. Frazier.[19] In its reply brief, Hospital points out that Dr. Frazier "does not state that if the [n]urse[] had questioned or reported [Meyer's] orders, th[e]n [Meyer] would likely have correctly diagnosed [Hardy]."

When the physician providing the patient's treatment misdiagnoses the patient and, as a result, fails to provide the appropriate treatment, it is clear that the physician's misdiagnosis resulted in the delay of the appropriate treatment. But it is not as equally obvious when a nurse's failure to recognize or report symptoms of a condition results in the delay of appropriate treatment for the patient because the nurse cannot authorize or provide the treatment.[20] An expert

---

[18]*See Estorque*, 302 S.W.3d at 28 (holding that the expert report was insufficient in that it did not explain the basis of the expert's opinions as to causation, stating that "his report leaves gaps by not explaining how or why the [defendant] physicians' failure to consult a urologist or gynecologist caused worsening or progression of [the plaintiff's] listed conditions").

[19]*See Collini v. Pustejovsky*, 280 S.W.3d 456, 467–68 (Tex. App.—Fort Worth 2009, no pet.) (holding that the expert report did not adequately address the link between the alleged breach of the standard of care and the injury that allegedly resulted to the patient because it did not provide any detail as to how the breach contributed to the injury).

[20]*See* Tex. Occ. Code Ann. § 301.004 (West Supp. 2011) (providing that the chapter of the occupations code on nursing does not authorize the practice of medicine); *see also Methodist Hosp. v. German*, No. 01-09-00925-CV, 2011 WL 6938521, at *8 (Tex. App.—Houston [1st Dist.] Dec. 29, 2011, no pet.) (holding

report linking a nurse's breach of the standard of care to the delay in treatment must explain how the breach caused or at least contributed to the delay. For example, did the doctor rely on the nurse's erroneous notes in making the diagnosis? Does the health care facility have a policy by which a nurse can report a doctor's questionable orders to a third party with authority to intervene in the patient's treatment? Would the nurse's questioning of the doctor about his orders probably cause the doctor to reconsider his diagnosis and the treatment he ordered?

In this case, Dr. Frazier's report stated that the nurses should have reported Hardy's symptoms to "a designated representative" of Hospital and that they should have ensured that Hospital had a protocol in place for reporting questionable orders. He also stated that the nurses should have reported Hardy's blood pressure drop to Meyer; should have ensured that Hospital had a protocol in place for reporting questionable orders and that all nurses were educated about the protocol; should have questioned Hardy's discharge; and should have questioned Meyer's orders for the narcotic pain medications given to Hardy. Dr. Frazier stated that these failures to comply with the standard of care

---

that "Texas law specifies that it is the doctor, not the nurse, who draws medical conclusions from the information observed and reported by the nurse" and stating that "[o]nly doctors are legally authorized to make a medical diagnosis by evaluating a patient's medical treatment and the development of subsequent symptoms to conclude that a particular medical condition has resulted").

resulted in the delay of the appropriate treatment for Hardy's appendicitis.[21]  And although this court cannot infer that, had the nurses reported the questionable orders and Hardy's dropping blood pressure to a "designated representative" of Hospital, the appropriate treatment would have been ordered, Dr. Frazier is permitted to make such an inference.[22]  As we discussed above, the report adequately explains how the delay in Hardy's treatment resulted in his injuries. The report discusses causation with sufficient specificity to inform Hospital of the conduct that the Hardys have called into question and provides a basis for the trial court to conclude that the claims have merit.[23]  The report is therefore adequate on causation with respect to Hospital.

Hospital argues that the harm that Dr. Frazier stated had resulted from the delay in Hardy's treatment is in the section of the report directed at Meyer's breach of the standard of care.  Hospital is correct that in the part of the report addressing Meyer's actions, Dr. Frazier explained what harm resulted to Hardy

---

[21]*Cf. Weatherford Tex. Hosp. Co., LLC v. Riley*, No. 02-10-00453-CV, 2011 WL 2518920, at *4 (Tex. App.—Fort Worth June 23, 2011) (holding expert report sufficient as to causation when the doctor stated in his report that if the nurses had complied with the standard of care, which, given the circumstances, required them to advocate for a change in the medical plan by use of the hospital chain of command, the child in the case would be have been delivered via c-section, avoiding the brain injuries the child suffered during the vaginal delivery).

[22]*See, e.g., id.* (stating that "section 74.351 does not prohibit *experts*, as opposed to courts reviewing expert reports, from making inferences based on medical history").

[23]*See Jelinek*, 328 S.W.3d at 539; *George*, 261 S.W.3d at 292.

by the delay in the appropriate treatment. But in the section addressing Hospital's actions, he again pointed out that because of the misdiagnosis, Hardy's appendicitis "was allowed to fester and develop into an abscess/peritonitis with sigmoid colon perforation." We do not believe that Dr. Frazier was required to repeat himself as to what further damages Hardy suffered as a result of the festering and resulting abscess, and Hospital has pointed us to no authority supporting an argument that he was required to do so. We overrule Hospital's sole issue.

**Conclusion**

Having overruled Meyer's sole issue and Hospital's sole issue, we affirm the trial court's order denying the motions to dismiss.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

DELIVERED:  May 10, 2012

14