

EL PASO SOUTHWESTERN
CARDIOVASCULAR ASSOCIATES,
P.A.,

§

No. 08-20-00090-CV

Appellant,

§

Appeal from the

v.

§

384th District Court

ERIKA CRANE, ESTATE OF NORMA
QUINTANA, CLARA VALDEZ, LUIS
VALDEZ, PEDRO VALDEZ,

§

of El Paso County, Texas

§

(TC# 2019DCV1401)

Appellees.

## O P I N I O N

El Paso Southwestern Cardiovascular Associates, P.A. appeals the trial court's denial of its motion to dismiss Appellees' health care liability claim following the death of Norma Lilia Quintana. The Appellees—Erika Crane, Clara Valdez, Luis Valdez Quintana, and Pedro Valdez— are Quintana's heirs and/or the representatives of her estate. Appellant's sole issue on appeal is whether Appellees failed to provide Appellant with an expert report in compliance with the Texas Medical Liability Act. The trial court denied Appellant's motion to dismiss on this basis, and this appeal followed.

We reverse the trial court's order denying Appellant's motion to dismiss and remand for further proceedings consistent with this opinion.

## BACKGROUND

Norma Lilia Quintana underwent a mitral valve replacement at University Medical Center of El Paso. Quintana suffered a minor cardiac arrest during surgery, but otherwise the procedure

went well. Afterwards, her surgeon Dr. Flores came to check on her condition. Quintana appeared to be recovering well from the surgery and would awake briefly for a few minutes before falling back asleep. Appellees allege Dr. Flores was in a rush to leave the hospital and therefore chose to personally administer a dose of Narcan to Quintana to hasten her recovery from sedation and wake her up faster. Shortly after the Narcan was administered, Quintana appeared to suffer from "a stroke and a seizure simultaneously." Hospital staff attempted CPR, but their efforts were not successful, and Quintana passed away shortly afterwards.

Appellees brought wrongful death and survival claims against University Medical Center,[1] Dr. Flores and Appellant alleging their negligent conduct resulted in the death of Norma Quintana. The negligent conduct alleged against Appellant includes: (1) failure to properly monitor Quintana; (2) failure to properly supervise hospital staff and doctors; (3) failure to instruct Dr. Flores to not give a fatal dose of Narcan; (4) allowing Dr. Flores to draw and administer his own dosage of Narcan; (5) failure to inform medical personnel of Quintana's condition in a timely manner; (6) not monitoring Quintana's medical condition and status; (7) not providing the proper preventative measures; (8) not training their staff on proper procedures to prevent the giving of a fatal dose of Narcan; (9) failure to enforce procedures to prevent giving a fatal dose of Narcan; and (10) failing to provide the care necessary to prevent Quintana from receiving a fatal dose of Narcan and subsequently suffering a cardiac arrest.

Pursuant to Section 74.351(a) of the Texas Medical Liability Act, Appellees served all parties with an expert report with attached curriculum vitae from John Carl Lundell, M.D., a board-certified anesthesiologist with extensive experience in the standard of care for the use of the medicines administered to Quintana. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(a). The

---

[1] Appellees subsequently removed University Medical Center as a defendant.

report addressed the standard of care for the use of Narcan, how the actions of Dr. Flores breached the standard of care, and ultimately subjected Quintana to an unnecessary risk and was the proximate cause of her death. The report states these opinions are on the decisions and care provided by Dr. Flores specifically, and the report does not mention Appellant beyond alluding to some affiliation Dr. Flores has with it.

Appellant filed objections to the expert report and a motion to dismiss claiming Appellees failed to timely serve an expert report to Appellant. Appellant contended Dr. Lundell's expert report only addressed the alleged negligence of Dr. Flores and does not address Appellant's breach and so was not a valid expert report as to Appellant. In response, Appellee claimed a separate expert report regarding Appellant was not necessary because they allege Appellant is vicariously liable for Dr. Flores' conduct. Appellee argued the expert report describing Dr. Flores' conduct was a valid report alleging Appellant's vicarious liability, and because they submitted a valid expert report as to one theory of liability, they are not required to provide another for each individual theory of liability. *See Certified EMS Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013). Appellant responded by arguing Appellees only pleaded direct negligence against Appellant and not vicarious liability. Appellant argued Dr. Lundell's report is not sufficient to support Appellee's claims of direct negligence, and as a result Appellees failed to serve an expert report.

The trial court denied Appellant's motion for dismissal. Appellant now appeals the trial court's denial, alleging Appellees failed to serve Appellant with an expert report, and therefore the trial court erred when it denied Appellant's motion to dismiss. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(b); *Ogletree v. Matthews*, 262 S.W.3d 316, 319-20 (Tex. 2007).

After notice of appeal was filed, Appellees filed a second amended petition which explicitly includes claims of vicarious liability against Appellant for the actions of Dr. Flores.

3

**DISCUSSION**

In its sole issue, Appellant argues the trial court abused its discretion by failing to dismiss Appellees' lawsuit because Appellees failed to provide Appellant with an expert report in compliance with the Texas Medical Liability Act. Specifically, Appellant alleges Dr. Lundell's expert report is not a valid expert report as to Appellant because the report does not implicate Appellant's conduct or contain a statement the claim against Appellant has merit. Appellant also argues Appellees failed to plead a vicarious liability theory and therefore are required to provide an expert report directly addressing Appellant's alleged negligence. Appellees contend Dr. Lundell's expert report is sufficient and is a valid report as to Appellant.

Appellees argue the expert report addressing Dr. Flores' conduct adequately addressed Appellant's alleged liability, and their pleadings were sufficient to give Appellant fair notice of their vicarious liability claims, thereby satisfying the Texas Medical Liability Act. They also argue that any alleged deficiency in their live pleading at the time of the expert report deadline was cured by filing their second amended petition expressly alleging vicarious liability against Appellant.

### *Standard of Review*

A sub-issue on appeal is under which standard of review we are to examine the trial court's actions. Appellees correctly assert that this Court should review a trial court's ruling on a motion to dismiss a health care liability claim based on the *sufficiency* of an expert report under an abuse of discretion standard. *Abshire v. Christus Health Southeast Tex.*, 563 S.W.3d 219, 223 (Tex. 2018); *see also Gonzalez v. Padilla*, 485 S.W.3d 236, 242 (Tex.App.—El Paso 2016, no pet.). A trial court abuses its discretion when it "renders an arbitrary and unreasonable decision lacking support in the facts or circumstances of the case" or "acts in an arbitrary or unreasonable manner

4

without reference to guiding rules or principles." *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011).

However, Appellant argues the trial court had no discretion to deny its motion to dismiss because Appellees filed no report as to Appellant. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(b); *Ogletree*, 262 S.W.3d at 319-20. Accordingly, we must first determine whether Appellees filed any report as to Appellant before we determine what, if any, discretion the trial court had in denying Appellant's motion to dismiss.

### *Applicable Law*

The Texas Medical Liability Act requires a plaintiff asserting a health care liability claim to serve an expert report to each healthcare provider against whom the claim is asserted within 120 days of filing the original petition. TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(a). A complete and valid expert report must contain an expert's opinions regarding: (1) the applicable standard of care; (2) the manner in which the health care provider breached the standard of care; and (3) the causal relationship between the breach and the harm claimed. *Am. Transitional Care Centers of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001); TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(r)(6). Additionally, to satisfy Section 74.351, the report must include the expert's opinion "that the claim has merit, and if the defendant's conduct is implicated." *Loaisiga v. Cerda*, 379 S.W.3d 248, 260 (Tex. 2012)(citing *Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex.2011)). If an expert report has not been timely served because elements of the report are deficient, the court may grant a thirty-day extension to cure the deficiencies. TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(c). The standard for granting a thirty-day extension is lenient and an extension should be granted if a report contains an expert's opinion that plaintiff's claim against the defendant has merit. *Tenet Hosps. Ltd. v. Bernal*, 482 S.W.3d 165, 176 (Tex.App.—El Paso 2015, no pet.)(citing *Scoresby*, 346 S.W.3d at

557). However, if a report fails to meet this standard, the trial court must grant a defendant's motion for dismissal. *Loaisiga*, 379 S.W.3d at 260; TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(b).

An expert report serves two functions: (1) to inform the defendant of the specific conduct the plaintiff has called into question; and (2) to provide a basis for the trial court to conclude the plaintiff's claim has merit. *Tenet Hosps. Ltd.,* 482 S.W.3d. at 169 (citing *Certified EMS, Inc.*, 392 S.W.3d at 630). A report does not need to cover every theory of liability to make the defendant aware of the conduct called into question. *Certified EM*S *Inc.*, 392 S.W.3d at 630. When a plaintiff alleges a vicarious liability claim, an expert report which only implicates an employee or agent's conduct is sufficient to inform defendant of their conduct to satisfy the expert report requirement. *Id.* at 632 (citing *Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671-72 (Tex. 2008)(per curiam). In cases where a plaintiff alleges multiple theories of liability, an expert report that adequately addresses at least one of the pleaded liability theories satisfies the statutory requirement. *See id.* Thus, where a plaintiff alleges both vicarious liability and direct liability against an employer, an expert report which adequately addresses the conduct of the employee is sufficient to address the vicarious liability claims, and thus satisfies the requirement as to *any* theory pleaded against the employer, including direct liability claims. *See id.* However, if a plaintiff is alleging *only* direct liability claims against the employer, then the expert report must implicate the employer's alleged negligent conduct. *See id.* ("Our statement [in *Gardner*] distinguished between expert reports required for vicarious liability claims, in which merely implicating the agent's conduct is sufficient, and those required for direct ones, in which the employer's conduct must be implicated.")(referencing *Gardner*, 274 S.W.3d at 671-72).

***Analysis***

6

Whether Appellees' expert report is sufficient depends on the theory of liability alleged. We thus address whether Appellees' pleading alleged vicarious liability against Appellant for the actions of Dr. Flores. However, to do so, we must first determine whether we can consider the allegations in Appellees' second amended petition filed July 29, 2020.

**A.  Which of Appellees' pleadings controls?**

Appellant relies on *Southwest Gen. Hosp., L.P. v. Gomez*, 357 S.W.3d 109, 113-14 (Tex.App.—San Antonio 2011, no pet.) for the premise that "nothing in section 74.351 prevents a plaintiff from amending her petition to clarify theories of liability after the expert report deadline." *Id.* (*citing* TEX.CIV.PRAC.&REM.CODE ANN. § 74.351). In that case, the plaintiff amended her petition to clarify her vicarious liability claims after the deadline for filing the expert report, but more than a month before the hearing on the defendant's motion to dismiss. *Id.* at 114. Because of the timing, our sister court in San Antonio felt the health care liability defendants "had ample opportunity to assert any objections to the expert report based on [the plaintiff's] vicarious liability claim[.]" *Id.* We are aware of one other intermediate court of appeals which held similarly. *See Dingler v. Tucker*, 301 S.W.3d 761, 768-71 (Tex.App.—Fort Worth 2009), *abrogated on other grounds by, Zanchi v. Lane*, 408 S.W.3d 373, 380 (Tex. 2013)(trial court abused its discretion dismissing vicarious liability claims when plaintiff amended his petition specifically alleging those claims before the motion to dismiss was decided, and the issue was thus properly pleaded).

We find the facts of the instant case distinguishable from *Gomez* and *Dingler* and decline to extend their reasoning here. While we offer no opinion on the propriety of considering allegations in an amended pleading **before** a motion to dismiss has been ruled upon, we find it improper for a health care liability plaintiff to be able to rely on allegations in an amended pleading filed **after** a defendant's motion to dismiss is denied as the basis for upholding denial of said

7

motion on appeal. The trial court lacked the opportunity to examine the allegations made in Appellees' second amended petition in issuing its ruling on Appellant's motion to dismiss; accordingly, on appeal, Appellees are limited to the record relied upon by the trial court in issuing its ruling on Appellant's motion. *See* TEX.R.APP.P. 33.1, 33.2; *see also Kreit v. Brewer & Pritchard, P.C.*, 530 S.W.3d 231, 239-40 (Tex.App.—Houston [14th Dist.] 2017, pet. denied)(where court of appeals refused to take judicial notice of document not made a part of the record before the trial court). Accordingly, we consider only the allegations made in Appellees' first amended petition in determining whether Appellees' pleading alleged vicarious liability against Appellant for the actions of Dr. Flores, and whether Appellees' expert report adequately addresses the liability alleged against Appellant.

**B. What type of liability does Appellees' first amended petition allege against Appellant?**

A vicarious liability claim is premised on the relationship between the employer and their employee. *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 132 (Tex. 2018). Vicarious liability allows the actions of an employee or other authorized agent to be imputed to that of his employer. *See id.* at 130; *see also Moore Freight Services v. Munoz*, 545 S.W.3d 85, 101 (Tex.App.—El Paso 2017, pet. denied). Direct liability claims, however, are based on the negligence of the employer's actions, not the actions of its employees. *See Moore Freight*, 545 S.W.3d at 98. Direct negligence claims against a health care provider-employer include failure to train employees, failure to enforce accepted standards of care, and failure to employ protocols to ensure quality care for patients. *Certified EMS Inc.*, 392 S.W.3d at 630. Direct liability claims also include allegations of negligent supervision. *See Moore Freight*, 545 S.W.3d at 98.

Here, Appellees have alleged ten acts of negligence on the part of Appellant. These acts generally constitute claims Appellant failed to properly train and supervise the conduct of Dr.

Flores. Appellees argue the allegations against Dr. Flores and Appellant, viewed collectively and liberally construed, are sufficient to give Appellant fair notice of Appellees' vicarious liability claims.

We disagree. As stated previously, both the Texas Supreme Court and this Court have found a failure to train and supervise an employee are negligent actions which serve as the basis for a claim of direct liability, not vicarious liability. *See Certified EMS Inc.*, 392 S.W.3d at 630; *Moore Freight*, 545 S.W.3d at 98. Appellees do not allege the type of relationship, if any, Dr. Flores has with Appellant, nor is any reference made to vicarious liability. While Appellees correctly argue a court should construe pleadings liberally, a court cannot infer claims which are not actually alleged. *Forester v. El Paso Elec. Co.*, 329 S.W.3d 832, 836 (Tex.App.—El Paso 2010, no pet.). As a result, we find Appellees only alleged direct liability claims and did not allege a theory of vicarious liability against Appellant.

### C. Does Appellees' expert report implicate Appellant's conduct?

Next, we address whether Dr. Lundell's expert report applies to Appellant. When a plaintiff alleges only direct liability against an employer, the expert report must implicate the employer's alleged negligent conduct. *See Certified EMS Inc.*, 392 S.W.3d at 632 ("Our statement [in *Gardner*] distinguished between expert reports required for vicarious liability claims, in which merely implicating the agent's conduct is sufficient, and those required for direct ones, in which the employer's conduct must be implicated.")(referencing *Gardner*, 274 S.W.3d at 671-72). Additionally, to qualify as an expert report at all, the report must contain an expert's opinion on whether a claim is meritorious, and if the defendant's conduct is implicated. *Loaisiga*, 379 S.W.3d at 260.

Dr. Lundell's expert report fails to implicate Appellant's conduct. The report only contains Dr. Lundell's opinions regarding the standard of care for the use of Narcan, how Dr. Flores's actions allegedly breached the standard of care, and how the breach proximately caused Quintana's death. The report does not mention Appellant's conduct in any regard, even generally, nor does it specifically address the direct liability claims alleged against Appellant. Dr. Lundell's report does not discuss the standard of care expected of a professional association like Appellant; it does not explain how Appellant's actions breached the standard of care; and it does not explain how the breach resulted in Quintana's harm and eventual death. In fact, Dr. Lundell specifically states the report only contains his opinions regarding Dr. Flores' conduct.[2] Additionally, while Dr. Lundell's report contains numerous statements Appellees' claims against Dr. Flores have merit, the report does not contain any opinions regarding the claims against Appellant. As stated previously, Dr. Lundell's report does not mention Appellant at all beyond stating, "Dr. Hector Flores of El Paso Southwestern Cardiovascular Associates, P.A."

Among other authority, Appellees cite *Ctr. for Neurological Disorders, P.A. v. George*, 261 S.W.3d 285, 295 (Tex.App.—Fort Worth 2008, pet. denied) for the premise that an expert report addressing claims against a doctor employed by a professional association is sufficient regarding claims against the professional association based on the doctor's negligence, because the doctor's negligence is imputed to the association. In that case, the plaintiffs sued a medical professional association and one of its doctors, alleging vicarious liability and direct liability claims against the professional association based on the doctor's conduct. *Id*. at 290. The Fort

---

[2] Dr. Lundell's report states, "My opinions specifically concern the applicable standards of care for Dr. Hector Flores of El Paso Southwestern Cardiovascular Associates, P.A., and in what ways the care he rendered failed to meet those standards as well as the causal relationship between this breach of the standard of care and the injury and harm suffered by Norma Quintana and claimed by her family." He later discusses opinions regarding Quintana's care by Flores in the ICU of University Medical Center. However, University Medical Center is no longer a party to this suit and Dr. Lundell's opinions on any alleged act or omission by University Medical Center is not at issue in this appeal.

10

Worth Court of Appeals held that the expert report addressing the alleged negligence of the doctor suffced to satisfy the expert report requirement for the professional association **as to the vicarious liability claims** the plaintiffs alleged against it. *Id.* at 294-95. It correctly noted that the Professional Association Act (now part of the Texas Business Organizations Code) states that a professional association shall be deemed jointly and severally liable for the acts and omissions of its agents, employees, or others acting on its behalf. *Id.* at 295; TEX.BUS.ORG.CODE ANN. § 301.010.

However, the Fort Worth court found the expert report did not satisfy the requirements under the Texas Medical Liability Act for the direct negligence claims against the professional association when the report failed to address the failure to train and supervise employees, including the defendant doctor, which formed the basis of the direct negligence claims against the professional association. *Id.* at 294. *See George*, 261 S.W.3d at 294. *George*, which was decided several years before *Certified EMS*, contradicts the Texas Supreme Court's position that so long as the expert report adequately addresses one theory of liability against an employer-defendant, it is sufficient as to all remaining theories alleged against that defendant. *Compare George*, 261 S.W.3d at 294[3] *with Certified EMS*, 392 S.W.3d at 632.[4] The Fort Worth court found the expert report satisfied the vicarious liability claims alleged against the professional association when the report expressly discussed how the doctor's actions, as an employee of the professional

---

[3] "The report does not state any specific conduct of CND that violated any applicable standard of care; the report here addresses only CND's vicarious liability for any negligence of Dr. Ward. Because Dr. Richmond's report does not state a standard of care applicable to CND or state with specificity any conduct of CND that breached an applicable standard of care, the report does not make a good faith effort to comply with section 74.351 as to CND's failure to supervise, and the trial court abused its discretion in finding otherwise." *George*, 261 S.W.3d at 294.

[4] "[W]hen a health care liability claim involves a vicarious liability theory, either alone or in combination with other theories, an expert report that meets the statutory standards as to the employee is sufficient to implicate the employer's conduct under the vicarious theory. And if any liability theory has been adequately covered, the entire case may proceed." *Certified EMS*, 392 S.W.3d at 632.

association, deviated from the standard of care. *George*, 261 S.W.3d at 295. In hindsight, considering *Certified EMS*, it was improper to find the expert report did not satisfy the requirements under the Texas Medical Liability Act for the direct negligence claims since the vicarious liability claims were properly covered by the expert report. *See Certified EMS*, 392 S.W.3d at 632 ("[I]f any liability theory [against a defendant] has been adequately covered [by the expert report], the entire case may proceed."); *George*, 261 S.W.3d at 294; However, *George* restates the established precedent, consistent with *Certified EMS*, that direct liability claims against an employer for its own negligent acts or omissions require an entirely separate standard of care and thus, an expert report addressing its conduct separate and apart from that of its employee(s). *See George*, 261 S.W.3d at 294; *see also Obstetrical and Gynecological Associates, P.A. v. McCoy*, 283 S.W.3d 96, 103 (Tex.App.—Houston [14th Dist.] 2009, pet. denied)("If OGA is correct that McCoy has asserted claims of direct negligence against it, then McCoy was required to serve OGA with an expert report specifically addressing its conduct rather than just the conduct of Drs. Jacobs and Gunn for which OGA is vicariously liable.").

Although a professional association may be jointly and severally liable for the acts of their agents, the relationship which gives rise to that liability—and the type of liability itself—must be pleaded. *See George*, 261 S.W.3d at 295 ("The Georges made claims against CND based on two grounds of vicarious liability . . . ."); *see also Forester*, 329 S.W.3d at 836 (the court cannot infer claims which are not pleaded). Here, as in *George*, Dr. Lundell's report does not contain his opinion implicating the conduct of Appellant or a statement alleging that the direct liability claims against Appellant—the only claims asserted against Appellant in Appellees' First Amended Petition—have merit. Therefore, we find Dr. Lundell's report fails to meet the bare minimum for an expert report and constitutes no report as to Appellant. *See Scoresby*, 346 S.W.3d at 556-57.

12

When a health care liability plaintiff fails to file an expert report as to a health care liability defendant, the trial court has no discretion but to dismiss the claims asserted against that defendant with prejudice and award the defendant costs and attorneys' fees. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(b); *Ogletree*, 262 S.W.3d at 319-20. We hold that the trial court erred when it denied Appellant's motion to dismiss.

Appellant's sole issue is sustained.

## CONCLUSION

Having sustained Appellant's sole issue on appeal, we reverse the trial court's order denying Appellant's motion to dismiss and remand for further proceedings consistent with this opinion.


December 17, 2021

YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Palafox, and Alley, JJ.